Present: Hassell, C.J., Keenan, Kinser, Lemons, and Agee, JJ., Carrico, S.J., and Whiting, R.J.

TAZEWELL COUNTY SCHOOL BOARD

v. Record No. 030109   OPINION BY JUSTICE CYNTHIA D. KINSER
                                    January 16, 2004
GEORGE BROWN

FROM THE CIRCUIT COURT OF TAZEWELL COUNTY
Henry A. Vanover, Judge

This appeal involves two grievance procedures that are mandated by different sections of Title 22.1 of the Code. The provisions of Code § 22.1-308 require the Board of Education to prescribe one of the grievance procedures, which we shall call the "State Grievance Procedure." Another statute, Code § 22.1-79(6), directs a school board to establish the other grievance procedure, which we shall call the "Local Grievance Procedure."

The dispositive question is which one of these grievance procedures applies to a school principal who is suspended. Because we conclude that a principal is covered by the State Grievance Procedure even though a dispute involving a suspension is not a grievable matter under that procedure, we will reverse the judgment of the circuit court finding that the principal in this case was covered by the Local Grievance Procedure and that he presented a grievable matter under that procedure.

I. MATERIAL FACTS AND PROCEEDINGS

George Brown was employed as the principal of Richlands High School located in Tazewell County. By a letter dated November 16, 2001, the division superintendent, Donald W. Hodock, suspended Brown with pay from his position as principal.[1] In a subsequent letter dated November 28, 2001, Hodock informed Brown of his right to a hearing before the Tazewell County School Board ("School Board") and suggested that the hearing could be arranged for the December 3, 2001, meeting of the School Board if Brown so requested.

Brown did not ask for that hearing before the School Board but instead requested a hearing before an advisory fact-finding panel pursuant to Step 4 of Part II of the State Grievance Procedure. He was subsequently told that he needed to file the appropriate grievance form in accordance with Step 2 of Part II of the State Grievance Procedure. On December 7, 2001, Brown filed a statement of his grievance on the specified form. He identified the action being grieved as his "[s]uspension from job duties" and requested "[i]mmediate reinstatement to position as [p]rincipal of Richlands High School."

---

[1] It is not necessary to summarize the stated reasons for Brown's suspension in order to resolve the issues presented on appeal.

After a series of letters between the parties and their respective counsel, exchange of information, and a meeting between Hodock and Brown, Hodock advised Brown by letter dated February 7, 2002, that he was adjusting the grievance and would recommend to the School Board that Brown be reassigned to another administrative position. In two subsequent letters, Hodock also notified Brown of his intention to recommend to the School Board that Brown be reassigned to a classroom teaching position for the 2002-03 school year. In two other letters, both dated February 8, 2002, Hodock ruled that Brown's December 7 grievance did not state a grievable matter because suspension with pay could not be the subject of a grievance. In one of the letters, Hodock again informed Brown that he would recommend to the School Board at its next meeting that Brown be reassigned as principal at a different school in the Tazewell County school system.

Hodock subsequently requested the School Board to determine whether Brown's December 7 statement of grievance presented a grievable matter. After requesting written arguments from both parties on the issue, the School Board ruled at its meeting on March 11, 2002, that suspension with pay is not a grievable matter. The School Board also accepted Hodock's recommendation to reassign Brown to a

classroom teaching position and to reduce his salary accordingly.

Brown then filed with the School Board a notice of appeal to circuit court, challenging the School Board's determination that his suspension with pay was not a grievable matter. In accordance with the provisions of Code § 22.1-314, the School Board transmitted the notice of appeal, exhibits, and other relevant documents to the circuit court. Upon considering argument of counsel, the parties' memoranda, and the record from the School Board, the court issued a letter opinion, finding that Brown's suspension presented a grievable issue.

The circuit court reasoned in a letter opinion and subsequent order that Code § 22.1-79(6) requires a school board to establish a grievance procedure for all its employees except a division superintendent and those employees covered under Articles 2 and 3 of Chapter 15, Title 22.1 of the Code. Interpreting the reference to employees covered under Articles 2 and 3 to mean "coverage under a grievance procedure specifically provided under either Article 2 or Article 3," the court concluded that Brown was not such an employee. Instead, the court found that the only class of employees, other than superintendents, that falls within the coverage exception

provided in Code § 22.1-79(6) consists of teachers.  Stated differently, the court concluded that neither Article 2 nor Article 3 of Chapter 15, Title 22.1 creates a grievance procedure for principals and that, therefore, Brown did not come within the coverage exception set out in Code § 22.1-79(6).

The court also found that this section requires the grievance procedure to include a method to resolve disputes between a school board and covered employees regarding, among other things, a "suspension."  Therefore, the court decided that Brown could pursue his grievance under the procedure established by the School Board pursuant to Code § 22.1-79(6) and that he had presented a grievable matter. Finally, the court rejected the School Board's argument that Brown's grievance was moot because he had been reinstated as a principal and then reassigned to a classroom.  In a final order, the court directed the School Board to afford Brown "a timely and fair method of resolution of [his] grievance."[2]  The School Board appeals from the circuit court's judgment.

## II. ANALYSIS

---

[2] The circuit court vacated its final order pending resolution of the School Board's motion to reconsider.  The court subsequently denied the motion and reinstated its final order.

In this appeal, the School Board presents several assignments of error that challenge the circuit court's findings and its interpretation of the relevant statutory provisions. Specifically, the School Board asserts that the court erred by holding that Brown is covered by the grievance procedure mandated by Code § 22.1-79(6) and that Brown's grievance was grievable under that procedure, by refusing to affirm the School Board's determination that Brown's grievance was not a grievable matter, and by refusing to dismiss Brown's appeal for lack of subject matter jurisdiction. The School Board also assigns error to the court's refusal to dismiss Brown's appeal as moot. Since this last assignment of error presents a threshold question, we will address it first.

### (A) MOOTNESS

The School Board argues that, once Brown's suspension was lifted and he was reinstated to the position of principal at an elementary school, his grievance concerning his suspension became moot. While this appeal was pending, the School Board also filed a motion to remand the case to the circuit court with instructions that it be dismissed as moot because Brown resigned his position as an employee of the School Board and the Tazewell County public school

system effective August 7, 2003.  We do not agree that the issues presented are moot.

As the circuit court noted in addressing the question of mootness, Brown has been "adversely affected in his professional reputation by the actions of the Tazewell County School Board, and those actions are not undone by his later reinstatement and reassignment."  Nor are they "undone" by his subsequent resignation.  The fact of and reasons for his suspension are contained in his personnel file and will remain there unless removed based upon a determination that the information therein was unfounded.  See Code § 22.1-295.1.  Thus, the question whether Brown presented a grievable issue that he could pursue through a grievance procedure to establish that information in his personnel file was unfounded is not moot.  See Story v. Commonwealth, 175 Va. 615, 616-17, 9 S.E.2d 344, 345 (1940) (because nature of evidence admitted bore upon appellant's fitness to be granted a certificate of registration, issues were not moot merely because certificates of registration had expired).  In other words, if Brown prevailed in this appeal, there is relief, other than reinstatement to his former position, that could be afforded to him under the circuit court's judgment directing the School Board to resolve his grievance.  See RF & P Corp. v. Little, 247 Va.

7

309, 315, 440 S.E.2d 908, 912 (1994) (where relief can be provided, issue is not moot); Hankins v. Town of Virginia Beach, 182 Va. 642, 643-44, 29 S.E.2d 831, 832 (1944) (same). Thus, this appeal and the issues presented are not moot.[3]

### (B) BROWN'S GRIEVANCE

The remaining issues raised in this appeal require the Court to address the statutory provisions regarding grievance procedures for public school employees and suspensions of those employees. We begin by surveying the two grievance procedures that are mandated by the provisions of Code §§ 22.1-308 and -79(6). Our examination of those statutory provisions and the grievance procedures created thereunder will illustrate certain inconsistencies that give rise to the issues before us. We also include in our analysis the separate statutory provision dealing with suspension of public school employees, Code § 22.1-315.

We turn first to the State Grievance Procedure mandated by the provisions of Code § 22.1-308. That statute requires the Board of Education to prescribe a grievance procedure, which shall include certain elements enumerated in the statute. Pursuant to that mandate and

---

[3] Accordingly, we will deny the School Board's motion to remand and dismiss this case.

its authority in Code § 22.1-16 to "promulgate such regulations as may be necessary to carry out its powers and duties and the provisions of" Title 22.1, the Board of Education established a "Procedure For Adjusting Grievances," 8 VAC 20-90-10 et seq. (the State Grievance Procedure). The School Board adopted this grievance procedure "in accordance with the Standards of Quality for the statutory mandate of Chapters 13.2 and 15, Article 3, Title 22.1" of the Code.[4]

The State Grievance Procedure contains three parts. Part I consists of definitions, Part II governs employment disputes other than dismissals or probation, and Part III controls disputes involving dismissals or probation. Each of these parts has some bearing on the resolution of the issues presented in this appeal.

The relevant definitions in Part I are for the terms " '[g]rievance,' " " '[t]eacher,' " and " '[s]upervisory employee.' " In pertinent part, the term " '[g]rievance' means, for the purpose of Part III, a complaint or dispute by a teacher relating to his or her employment involving

_____

[4] The version adopted by the School Board is identical to the version promulgated by the Board of Education, except in some aspects that do not have any bearing on the issues presented here. Thus, when we refer to the State Grievance Procedure, we mean the version adopted by the

9

dismissal or placing on probation.  The term 'grievance' shall not include a complaint or dispute by a teacher relating to . . . suspension of a teacher . . . ."  The exclusion of a dispute involving a suspension is consistent with the statutory definition of the term " '[g]rievance.' "  The definition of that term in Code § 22.1-306 expressly excludes "a complaint or dispute by a teacher relating to . . . suspension of a teacher . . . ."  Next, the term

> "[t]eacher" or "teachers" means, for the purpose of Part II, all employees of the school division involved in classroom instruction and all other full-time employees of the school division except those employees classified as supervising employees. "Teacher" means, for the purpose of Part III, all regularly certified/licensed professional public school personnel employed under a written contract as provided by § 22.1-302 of the Code of Virginia by any school division as a teacher or supervisor of classroom teachers but excluding all superintendents.

Finally, in pertinent part, the term " '[s]upervisory employee' means any person having authority in the interest of the board . . . (ii) to direct other employees; or (iii) to adjust the grievance of other employees . . . ."

Based on these definitions, the parties agree on two points, and we concur.  First, if a principal such as Brown is covered by the State Grievance Procedure, such coverage

---

School Board unless we specifically cite 8 VAC 20-90-10 et seq.

10

is created only in Part III since he is a supervisory employee.  Second, for the purposes of Part III, a dispute involving a suspension is not included within the definition of the term " '[g]rievance.' "  Thus, if the State Grievance Procedure applies to Brown, a point he disputes, his suspension was not a grievable matter and the circuit court erred in finding otherwise.

The other grievance procedure at issue, the Local Grievance Procedure, is mandated by Code § 22.1-79(6).  That statute requires a school board

> [i]n instances in which no grievance procedure has been adopted prior to January 1, 1991, [to] establish and administer by July 1, 1992, a grievance procedure for all school board employees, except the division superintendent and those employees covered under the provisions of Article 2 (§ 22.1-293 et seq.) and Article 3 (§ 22.1-306 et seq.) of Chapter 15 of this title, who have completed such probationary period as may be required by the school board, not to exceed eighteen months.  The grievance procedure shall afford a timely and fair method of the resolution of disputes arising between the school board and such employees regarding dismissal, suspension, or other disciplinary actions and shall be consistent with the provisions of the Board of Education's procedures for adjusting grievances except that there shall be no right to a hearing before a fact-finding panel[.]

Code § 22.1-79(6).

In 1993, the School Board adopted the Local Grievance Procedure for "[s]upervisory and [c]lassified [e]mployees" in accordance with this statutory mandate.  That grievance procedure defines the term "[s]upervisory employees" to

11

include "principals." However, it also provides that the dismissal or probation of a supervisory employee is governed by Part III of the State Grievance Procedure. The term " '[c]lassified employees' is defined as that group of those school board's employees whose members do not hold certificates as promulgated by the Virginia Board of Education." According to its express terms, the Local Grievance Procedure provides that "[a]ll full-time classified employees, including those assigned to the administrative salary schedule, who have successfully completed a probationary period, shall have access to the . . . grievance procedures [created therein] for matters specified as grievable." (Emphasis added.) In other words, the procedures created in the Local Grievance Procedure do not cover "[s]upervisory employees," such as "principals."[5] The grievable matters enumerated in the Local Grievance Procedure do, however, include a dispute involving a suspension.

_____

[5] In finding that Brown could utilize the Local Grievance Procedure required by Code § 22.1-79(6), the circuit court never explained how Brown fell within the definition of the term "[c]lassified employees." Nor does Brown address that issue or the anomaly created by saying that he could utilize a grievance procedure that, by definition, does not apply to him.

This summary of the two grievance procedures brings us to the question whether the circuit court erred in finding that Brown was covered by the Local Grievance Procedure mandated by Code § 22.1-79(6) and not the State Grievance Procedure. Brown argues, and the circuit court concluded, that the exception in Code § 22.1-79(6) for "employees covered under the provisions of Article 2 . . . and Article 3 . . . of Chapter 15 of this title [22.1]" excepts employees covered "under a grievance procedure specified under either Article 2 or Article 3." (Emphasis added.) To hold otherwise, argues Brown, would render the provisions of Code § 22.1-79(6) and the grievance procedure mandated therein meaningless because all school board employees, not just teachers and principals, are covered by some of the Code sections in Article 2 and would therefore fall in that statute's coverage exception.

Brown is correct in that certain sections of Article 2 are applicable to most, if not all, public school employees. See e.g., Code §§ 22.1-295.1 (unfounded information shall not be maintained in any employee personnel file); -296(B) (providing reimbursement for private transportation to all school board employees); -296.1 (requiring as a condition of employment certification that an applicant has not been convicted of a felony or

13

other specified crimes); -296.2 (requiring all applicants for employment to submit to fingerprinting).  However, Brown's position, as well as the circuit court's conclusion, ignores the word "and" in Code § 22.1-79(6).  The grievance procedure required by that statute applies to all school board employees except "those employees covered under the provisions of Article 2 . . . <u>and</u> Article 3."[6]  Code § 22.1-79(6).  (Emphasis added.)  Brown and the circuit court interpret this phrase as though it excepted those employees covered under the provisions of Article 2 <u>or</u> Article 3.  While many public school employees are covered in some respects by certain sections in Article 2, the same cannot be said about Article 3.  For the exception in Code § 22.1-79(6) to apply, a public school employee must be covered by both articles.

Thus, we hold that the language of Code § 22.1-79(6) is plain and unambiguous.  It is not necessary to add language to the statute as the circuit court did in order to ascertain its meaning and applicability.  "Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has

---

[6] Although not relevant to our discussion, Code § 22.1-79(6) also excepts a division superintendent.

14

actually expressed." City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995). A court "cannot change or amend a statute under the guise of construing it." Coca-Cola Bottling Co. of Roanoke, Inc. v. County of Botetourt, 259 Va. 559, 565, 526 S.E.2d 746, 750 (2000). We also note that to insert the phrase covered by a grievance procedure under Article 2 or Article 3 is illogical because there is no grievance procedure established in Article 2.

Nevertheless, Brown asserts that he was not a school board employee covered under Article 3 and that, therefore, he does not fall within the exception set forth in Code § 22.1-79(6). He argues that Article 3 applies only to teachers and not to principals because the term "principal" is not mentioned in that article. Relying on this Court's decision in Lee-Warren v. School Bd. of Cumberland County, 241 Va. 442, 445, 403 S.E.2d 691, 692 (1991), Brown contends that principals and teachers are not the same and that the term "teacher" as used in Article 3 cannot be interpreted to include the position of principal. We do not agree.

As already explained, the Board of Education promulgated the State Grievance Procedure pursuant to the directive set forth in Code § 22.1-308. It is true that

15

the term "[g]rievance" is defined in Code § 22.1-306 to mean "a complaint or dispute by a teacher" and that the term "principal" is not used in the various provisions pertaining to the State Grievance Procedure set out in Article 3. However, the term "teacher" is not defined for the purposes of Article 3. Consequently, under its rule-making authority, see Code § 22.1-16, the Board of Education defined that term in Part I of the State Grievance Procedure. 8 VAC 20-90-10.

The definition of the term "teacher" for purposes of Part III of the State Grievance Procedure includes "all regularly certified/licensed professional public school personnel employed under a written contract . . . as a teacher or supervisor of classroom teachers." A principal is required to "hold licenses as prescribed by the Board of Education," Code § 22.1-293, and to have a written contract, see 8 VAC 20-440-10 and 8 VAC 20-440-30. And, a principal is clearly a supervisor of classroom teachers. Thus, a principal such as Brown fell within the definition of the term "teacher" for purposes of Part III of the State Grievance Procedure. Accordingly, he was an employee covered by both Article 2, see Code § 22.1-293, and Article 3 of Chapter 15, Title 22.1.

16

The fact that a suspension is specifically excluded as a grievable matter under the State Grievance Procedure does not change that result. The provisions of Code § 22.1-79(6) creating the coverage exception at issue require only that the employee be covered under both articles, not that any specific type of employee dispute be covered. Nor does the fact that the authority for the Board of Education to define the term "teacher" derives from Code § 22.1-16 rather than Article 3 change our conclusion. In other words, Brown was covered by Articles 2 and 3 and therefore was not entitled to utilize the Local Grievance Procedure established pursuant to Code § 22.1-79(6). Thus, we hold that the circuit court erred in finding that Brown did not come within the exception carved out in Code § 22.1-79(6).

This conclusion is consistent with an opinion of the Attorney General. Noting the definition of the term "teacher" adopted by the Board of Education for purposes of Part III of the State Grievance Procedure, the Attorney General opined "that principals and supervisors who meet the State Board's . . . definition of 'teacher,' have the same grievance procedure rights with regard to disciplinary probation, dismissal or suspension as outlined for teachers in [Code] § 22.1-308." 1983-84 Op. Atty. Gen. 309. "[W]e have repeatedly held that the General Assembly is presumed

to have knowledge of the Attorney General's interpretation of statutes, and the General Assembly's failure to make corrective amendments evinces legislative acquiescence in the Attorney General's interpretation."  American Woodmark, 250 Va. at 458, 464 S.E.2d at 153.  The General Assembly has taken no legislative action to change the statutory interpretation set forth in this opinion of the Attorney General.

Additionally, the Board of Education promulgated the definition of the term "teacher" in order to implement the grievance procedure mandated by Code § 22.1-308.  An "elementary rule of statutory interpretation is that the construction accorded a statute by public officials charged with its administration and enforcement is entitled to be given weight by the court."  Commonwealth v. American Radiator & Standard Sanitary Corp., 202 Va. 13, 19, 116 S.E.2d 44, 48 (1960).  We presume that the General Assembly is cognizant of the construction of the term "teacher" adopted by the Board of Education and, since that construction has continued for a long period without any change by the General Assembly, we further presume that it has acquiesced in the particular construction of that term. See id.

Contrary to Brown's argument, our decision in Lee-Warren does not compel a different result. There, the issue was " '[w]hether under Virginia law, a school principal with continuing contract status retains that status upon accepting a job as principal in another school division within Virginia[.]' " 241 Va. at 443, 403 S.E.2d at 691. To resolve that question, we had to compare two statutory provisions, Code § 22.1-294 dealing with continuing contract status for a principal, assistant principal or supervisor, and Code § 22.1-303 addressing continuing contract status for a teacher. Because the former provision dealt only with principals, assistant principals, and supervisors while the latter statute addressed only teachers, we concluded that certain transfer provisions found only in Code § 22.1-303 applied solely to teachers. 241 Va. at 446, 403 S.E.2d at 693. In the present case, we do not have statutory provisions dealing with teachers and principals in separate and distinct ways. And, the definition of the term "teacher" promulgated by the Board of Education does not conflict with any statutory definition of that term since the General Assembly did not include one.

This brings us to the last step of our analysis. The circuit court found that Brown had presented a grievable

19

issue and remanded his grievance to the School Board for resolution. The court's jurisdiction to review a school board's determination of grievability is found in Code § 22.1-314, which is part of Article 3 and the State Grievance Procedure.[7] That statute allows a decision of a school board regarding grievability to be appealed to the circuit court "having jurisdiction in the school division for a hearing on the issue of grievability." However, the definition of the term "grievance" in Code § 22.1-306 and in the Part I of the State Grievance Procedure specifically excludes a dispute involving a suspension as a grievable matter. Thus, the circuit court erred in finding that Brown had presented a grievable issue.

This result does not mean that Brown had no remedy. The provisions of Code § 22.1-315, which are contained in

_____

[7] In light of our holding that Brown was covered by Part III of the State Grievance Procedure, it is not necessary to decide whether the right to appeal a school board's determination of grievability to the circuit court is also part of the Local Grievance Procedure. Brown argues that it is because of the language in Code § 22.1-79(6), providing that "[t]he grievance procedure shall . . . be consistent with the provisions of the Board of Education's procedures for adjusting grievances except that there shall be no right to a hearing before a fact-finding panel." The School Board disagrees with that position. If the right to appeal a school board's determination regarding grievability is not required by Code § 22.1-79(6) and thus not part of the Local Grievance Procedure, then a circuit court would not have subject matter jurisdiction to

Article 4 of Chapter 15, Title 22.1, afford "[a] teacher or other public school employee" who has been suspended "an opportunity for a hearing before the school board in accordance with [Code] §§ 22.1-311 and 22.1-313, if applicable."  In fact, Hodock advised Brown of his right to such a hearing by letter dated November 28, 2001, but Brown never requested that hearing.[8]

CONCLUSION

For these reasons, we hold that the circuit court erred in finding that Brown's December 7, 2001, grievance regarding his "[s]uspension from job duties" presented a grievable matter.  Thus, we will reverse the judgment of the circuit court and enter final judgment here for the School Board.  We will also deny the School Board's motion to remand this case with directions to dismiss it as moot.

_____

hear a grievability issue on appeal when the grievant was proceeding under the Local Grievance Procedure.

[8] Given our holding that Brown was covered by Part III of the State Grievance Procedure which excludes a dispute involving a suspension, it also is not necessary to decide whether Code § 22.1-315 provides the exclusive remedy for a public school employee who has been suspended, irrespective of which grievance procedure would otherwise cover the employee.  Brown argues that it does not because of the provision in Code § 22.1-79(6) stating that the grievance procedure shall afford a method of resolving disputes concerning, among other things, a suspension.  The School Board, however, claims that the 1996 amendment of Code § 22.1-315 adding the phrase "other public school employee" implicitly repealed that portion of Code § 22.1-79(6) dealing with a suspension.

Reversed and final judgment.