Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and
McClanahan, JJ., and Carrico and Lacy, S.JJ.

E.C.

v.  Record No. 110523                    OPINION BY SENIOR JUSTICE
                                         ELIZABETH B. LACY
VIRGINIA DEPARTMENT OF                       March 2, 2012
JUVENILE JUSTICE

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

E.C. was released from custody while his petition for a
writ of habeas corpus was pending.  In this appeal we consider
whether the circuit court erred in holding that because the
petitioner was no longer in custody, its jurisdiction ended or,
alternatively, the case was rendered moot.

BACKGROUND

In June 2007, E.C., then 15 years old, was charged in the
Juvenile and Domestic Relations District Court of Stafford
County (JDR Court) with the rape of a 14 year-old girl, E.G., in
violation of Code § 18.2-61.  E.C. also was charged with
breaking and entering in the daytime with intent to commit rape,
in violation of Code § 18.2-90, and abduction, in violation of
Code § 18.2-47.  Upon advice of counsel, E.C. entered an
agreement with the Commonwealth in which he entered a plea of
facts sufficient for a finding of guilty to the charges of
breaking and entering and rape and the Commonwealth agreed to
nolle prosse the abduction charge and forego seeking prosecution

of E.C. as an adult.  The JDR Court adjudged E.C. delinquent and committed him to the custody of the Department of Juvenile Justice (DJJ) for an indeterminate period.[1]  The Court also ordered E.C. to register as a sex offender.  On February 25, 2009, E.C. was released from the custody of the DJJ and placed under parole supervision managed by the 16th District Juvenile and Domestic Relations Court Service Unit of the City of Orange.

On August 18, 2009, a consortium of attorneys from various entities[2] filed a petition for a writ of habeas corpus on E.C.'s behalf alleging that E.C.'s guilty plea was neither knowing nor voluntary and was constitutionally invalid for a number of reasons generally relating to the ineffective assistance of counsel.  E.C. also asserted that he was actually innocent of the crimes, alleging that on or about November 23, 2007, E.G. recanted her complaint against E.C. and admitted that "she had lied about the incident with E.C. and that the encounter had been consensual" and that on November 28, 2007, E.G.'s mother informed E.C.'s court-appointed counsel of this recantation. E.C. alleged that his court-appointed counsel filed a motion to set aside the verdict on February 28, 2008, but the JDR Court denied the motion as untimely.

---

[1] Hereinafter we refer to delinquency adjudications as convictions.

[2] The attorneys were associated with JustChildren/Legal Aid, The Innocence Project at the University of Virginia School of Law, or McGuireWoods LLP.

Prior to filing E.C.'s petition for a writ of habeas corpus, a member of E.C.'s legal team contacted the director of court services for the 16th District Court Service Unit, and requested that E.C.'s release from parole be delayed to allow E.C.'s counsel "the opportunity to file a document related to the matters on which they were representing him." The director agreed to delay E.C.'s release for "a brief period of time." E.C. was released from parole supervision on August 24, 2009, six days after his habeas corpus petition was filed.

On November 3, 2009, the DJJ moved to dismiss E.C.'s petition for a writ of habeas corpus arguing, inter alia, that the circuit court lacked jurisdiction to consider the petition because E.C. was no longer under any form of detention. Following oral arguments on the motion, the circuit court granted the DJJ's motion to dismiss finding that, in the absence of detention, it had no jurisdiction to consider a petition for a writ of habeas corpus. The circuit court also concluded that "the requirement for sex offender registration [is] not the functional equivalent of detention, confinement, or custody, or the contigent [sic] exposure to confinement inherent in parole or a suspended sentence." Alternatively, the circuit court held that even if it had jurisdiction, the petition was moot because E.C. was "under no form of confinement or detention" and,

therefore, the "Court has no capacity to grant the relief contemplated by the statute."

E.C. filed a timely appeal challenging these three rulings of the circuit court.

## DISCUSSION

### I.  JURISDICTION

In his first assignment of error, E.C. asserts that a circuit court's jurisdiction to consider a petition for a writ of habeas corpus is established at the time the petition is filed and because E.C. was under parole supervision at the time his petition was filed, the circuit court had jurisdiction to consider the petition.  The DJJ does not dispute that the circuit court had the requisite jurisdiction to consider the case at the time the petition was filed, but contends that the circuit court's jurisdiction was extinguished or ended when E.C. was released from parole supervision because, at that point, the court could no longer enter an order that would impact the duration of E.C.'s confinement.

To consider the habeas corpus petition in this case, the circuit court had to have subject matter or "potential" jurisdiction as well as "active" jurisdiction.  Ghameshlouy v. Commonwealth, 279 Va. 379, 388-89, 689 S.E.2d 698, 702-03 (2010).  Our jurisprudence has long held that a court's jurisdiction is determined at the time the litigation is filed

4

and, once established, remains until the termination of the litigation.  As we stated in Laing v. Commonwealth, 205 Va. 511, 514, 137 S.E.2d 896, 899 (1964):

> [I]t is axiomatic that when a court acquires jurisdiction of the subject matter and the person, it retains jurisdiction until the matter before it has been fully adjudicated.

See also Jones v. Commonwealth, 227 Va. 425, 429, 317 S.E.2d 482, 484 (1984) (court acquired and retained jurisdiction until matter fully adjudicated); Rochelle v. Rochelle, 225 Va. 387, 391, 302 S.E.2d 59, 62 (1983) (same); 20 Am. Jur.2d, Courts §§ 98, 100, 101 (2011) (citing cases).  While intervening events may affect the nature of the relief available, they do not end or extinguish the jurisdiction of the Court.

The DJJ argues that a habeas corpus proceeding is not subject to this "axiomatic" principle relying primarily on language in the per curiam opinion issued in Blair v. Peyton, 210 Va. 416, 171 S.E.2d 690 (1970).  Closer review of the record and history of Blair demonstrates that it is not dispositive of the issue in this case and has little, if any, precedential value.

The petitioner in Blair filed a petition for a writ of habeas corpus challenging two convictions he had received from the Corporation Court of the City of Norfolk.  At the time he filed his petition, the petitioner had already completed the

5

sentences imposed as a result of those convictions. He was, however, serving sentences imposed for convictions against him entered by the Circuit Court of Culpeper County. The relief sought was a credit for the time served on the alleged invalid Norfolk convictions against the time he had to serve for the Culpeper convictions.

The respondent filed a motion to dismiss the habeas corpus petition arguing that the corporation court had no jurisdiction because the petitioner had already served the sentences imposed for the Norfolk convictions. The corporation court granted the motion to dismiss and the petitioner appealed.

In an unpublished order, this Court reversed the corporation court's judgment and remanded the case for a plenary hearing citing Peyton v. Christian, 208 Va. 105, 155 S.E.2d 335 (1967). Blair v. Peyton, Record No. 7046 (October 10, 1967).

On remand, the respondent again urged dismissal of the petition on jurisdictional grounds and that Christian was not applicable to the jurisdictional issue in the case. The record indicates that the corporation court concluded that the mandate from this Court required it to conduct a plenary hearing. Following that hearing, the corporation court dismissed the petition on its merits and the petitioner again appealed to this Court.

In the second appeal to this Court, the respondent again argued that the corporation court was without jurisdiction because the petitioner had already fully served the challenged sentences at the time the petition was filed, citing Smyth v. Midgett, 199 Va. 727, 101 S.E.2d 575 (1958) and Smyth v. Holland, 199 Va. 92, 97 S.E.2d 745 (1957). This Court dismissed the appeal, however, stating that because the petitioner had completed his sentences for the Culpeper convictions prior to the appeal being heard in the Supreme Court, any opinion rendered would be an advisory opinion and the Court "therefore [was] without jurisdiction further to entertain the case." Blair, 210 Va. at 417, 171 S.E.2d at 691. No citation to legal authority supporting this conclusion was provided.

The Court did not address the jurisdictional question raised by the respondent in both appeals; yet, eight months later, in Moore v. Peyton, 211 Va. 119, 119-20, 176 S.E.2d 427, 427 (1970), the Court reaffirmed the principle that a court does not acquire jurisdiction to determine the validity of a sentence fully served before the proceeding for a writ of habeas corpus is instituted. The Court also stated that Christian was not applicable to such cases. Moore, 211 Va. at 120, 176 S.E.2d at 428. The Court did not refer to its previous decision in Blair.

The DJJ relies on the language in the Blair per curiam opinion that the Court was "without jurisdiction further to

7

entertain the case" to support its position that habeas corpus jurisdiction can end or be extinguished by subsequent events. Blair has not been relied upon in any Virginia appellate case for that principle, nor has it been cited for any reason in any subsequent Virginia appellate case.

For these reasons, the precedential value of Blair is suspect and we reject the DJJ's argument that Blair is dispositive of the jurisdictional issue in this case.

In summary, the habeas corpus statutes vested the circuit court with subject matter jurisdiction of the proceeding and active jurisdiction arose because the petitioner was detained for purposes of habeas corpus when the petition was filed. Ghameshlouy, 279 Va. at 388-89, 689 S.E.2d at 702-03. That jurisdiction did not end because E.C. was released from detention during the course of the proceeding. Laing, 205 Va. at 514, 137 S.E.2d at 899. Accordingly, the circuit court erred in determining that it did not have jurisdiction to consider E.C.'s petition for a writ of habeas corpus.

## II. MOOTNESS

The circuit court also held that, even if jurisdiction continued, the case was moot because E.C. no longer was subject to confinement and, therefore, no order favorably affecting the duration of his confinement could be entered. E.C. challenges this holding, arguing that under established principles, the

8

case is not moot because an actual controversy remains.  He asserts that he has a continuing and concrete injury which is a collateral consequence of his convictions, and the habeas court has the ability to enter an order providing him the remedy he seeks.

Our jurisprudence provides that a case is moot and must be dismissed when the case or controversy that existed between litigants has ceased to exist:

> Whenever it appears or is made to appear that there is no actual controversy between the litigants, or that, if it once existed, it has ceased to do so, it is the duty of every judicial tribunal not to proceed to the formal determination of the apparent controversy, but to dismiss the case.  It is not the office of courts to give opinions on abstract propositions of law, or to decide questions upon which no rights depend, and where no relief can be afforded.  Only real controversies and existing rights are entitled to invoke the exercise of their powers.

Franklin v. Peers, 95 Va. 602, 603, 29 S.E. 321, 321 (1898); see also Miller v. International Union of United Brewery, etc. Workers of Am. 187 Va. 889, 897, 48 S.E.2d 252, 255 (1948); Hankins v. Town of Virginia Beach, 182 Va. 642, 643-44, 29 S.E.2d 831, 832 (1944); Potts v. Mathieson Alkali Works, 165 Va. 196, 225, 181 S.E. 521, 533 (1935); Board of Supervisors of Amherst County v. Combs, 160 Va. 487, 497, 169 S.E. 589, 593 (1933); Wallerstein v. Brander, 136 Va. 543, 546, 118 S.E. 224,

225 (1923); Hamer v. Commonwealth, 107 Va. 636, 637, 59 S.E. 400, 400 (1907).

E.C. asserts that, even though he has been released from confinement, a controversy still exists because his convictions and the JDR court's order requiring him to register as a sex offender based on the convictions impose collateral consequences that are obvious and severe. Under these circumstances, he argues that his petition is not moot and that the circuit court erred in holding otherwise.

In support of his position E.C. cites United States Supreme Court cases that have held that termination of a petitioner's custody prior to adjudication of a habeas corpus petition does not automatically terminate the existence of an actual controversy and render the case moot. When a petitioner challenging the legality of his conviction continues to suffer a concrete and continuing injury, which is a collateral consequence of the conviction, a case or controversy remains and release from the sentence imposed does not render the case moot. This principle has been applied whether the petition for a writ of habeas corpus challenged the legality of a conviction for violation of a federal statute pursuant to 28 U.S.C. § 2255 or of a state statute pursuant to 28 U.S.C. § 2254. See e.g. Spencer v. Kemna, 523 U.S. 1, 8 (1998); Calderon v. Moore, 518 U.S. 149, 150 (1996); Evitts v. Lucey, 469 U.S. 387, 391 n.4

(1985); Carafas v. LaVallee, 391 U.S. 234, 237 (1968); Sibron v. New York, 392 U.S. 40, 57-58 (1968); Pollard v. United States, 352 U.S. 354, 358 (1957); Fiswick v. United States, 329 U.S. 211, 221-23 (1946).

A significant number of the states that have considered the issue also have determined that collateral consequences of a conviction may be sufficient to defeat a claim of mootness when the petitioner in a habeas proceeding has been released from custody subsequent to the filing of the petition.  See e.g. Mead v. State, 504 P.2d 855, 856 (Alaska 1972); People v. Villa, 202 P.3d 427, 432 (Cal. 2009); Moland v. People, 757 P.2d 137, 139 (Colo. 1988); Lebron v. Comm'r of Corr., 876 A.2d 1178, 1193 (Conn. 2005); Gural v. State, 251 A.2d 344, 344-45 (Del. 1969); Gardner v. State, 548 So.2d 900, 901 (Fla. Dist. Ct. App. 1989); Capote v. Ray, 577 S.E.2d 755, 757 n.4 (Ga. 2002); Smith v. State, 491 P.2d 733, 735 (Idaho 1971); Rawlins v. State, 182 P.3d 1271, 1274 (Kan. Ct. App. 2008); Bennett v. State, 289 A.2d 28, 31 (Me. 1972); In re Hackett, 463 A.2d 376, 383 (N.J. Super. Ct. App. Div. 1983); McDuffie v. Berzzarins, 330 N.E.2d 667, 669 (Ohio 1975); Morasch v. State, 493 P.2d 1364, 1366 (Or. 1972); Commonwealth v. Doria, 364 A.2d 322, 324-25 (Pa. 1976); State v. McCraw, 551 S.W.2d 692, 694 (Tenn. 1977); Ex parte Guzman, 551 S.W.2d 387, 388 (Tex. Crim. App. 1977); Duran v. Morris, 635 P.2d 43, 45 (Utah 1981); Monohan v. Burdman, 530 P.2d 334, 336-

11

37 (Wash. 1975); State v. Theoharopoulos, 240 N.W.2d 635, 637–38 (Wis. 1976).

We have not previously been asked to consider whether collateral consequences stemming from a criminal conviction are sufficient to survive a claim of mootness in a habeas corpus proceeding.[3] We have, however, applied this principle in another context.

In Tazewell County School Board v. Brown, 267 Va. 150, 591 S.E.2d 671 (2004), the school division superintendent suspended Brown with pay from his position as principal of a high school and notified Brown that he would recommend to the School Board that Brown be reassigned as a principal at another school in the system and subsequently reassigned to a classroom. Brown lodged a grievance based on his suspension from his job duties and requested "immediate reinstatement" to his position as principal of his former high school. When the School Board determined that Brown's claim was not a grievable matter, he appealed to

_____

[3] We have dismissed petitions for a writ of habeas corpus as moot in circumstances where the petitioner has completed the sentence imposed and been released or has received an adjustment to the sentence. See e.g. Jasper v. Director, Dep't. of Corrs., Record No. 110873 (October 18, 2011) (unpublished); Brown v. Director, Dep't. of Corrs., Record No. 101332 (March 2, 2011) (unpublished); Arambula v. Director, Dep't. of Corrs., Record No. 100845 (November 15, 2010) (unpublished); Camp v. Sheriff, City of Richmond, Record No. 092544 (August 12, 2010) (unpublished). None of the petitioners in these cases filed motions for rehearing asserting that their cases were not moot.

the circuit court. The School Board argued to the circuit court that the matter was moot because Brown was reinstated as a principal and reassigned. Id. at 155-56, 591 S.E.2d at 672-73. The circuit court rejected this argument, finding that Brown had been " 'adversely affected in his professional reputation,' " which was not " 'undone' " by the subsequent actions of the School Board. Id. at 157, 591 S.E.2d at 674. In its appeal to this Court, the School Board again argued that the case was moot adding that, during the appeal process, Brown had resigned his employment with the School Board. Id.

This Court rejected the Board's mootness claim, asserting that the fact of, and reasons for, Brown's suspension and reassignment would remain in his personnel file unless determined to be unfounded. "In other words, if Brown prevailed in this appeal, there is relief, other than reinstatement to his former position, that could be afforded to him under the circuit court's judgment directing the School Board to resolve his grievance." Id. at 158, 591 S.E.2d at 674. In considering the lingering impact the School Board's action could have on Brown's reputation, this Court determined that such collateral consequences precluded rendering the case moot.

In this case, E.C. asserts that his convictions and attendant requirement of registering as a sex offender impose substantial consequences on him which are sufficiently

13

significant to avoid rendering the case moot. A delinquency adjudication can be counted as a prior conviction sufficient to support an enhanced punishment, Code § 17.1-805(B), and counts towards the "three strike rule" which automatically sentences the individual to imprisonment with no suspended sentence for certain sex offenses. Code § 18.2-67.5:3(C). E.C. cannot own or transport a firearm and he must register as a sex offender for the rest of his life. As a registered sex offender he may not serve as an adoptive or foster parent, is restricted in his choice of school and employment, such as in home health care or nursing positions, and is subject to reputational harm from viewing on the sex offender registry, which must contain his picture, address, and convictions. These "collateral consequences" can only be avoided if, as a first step, E.C. can prevail on his claim that his convictions were the result of a constitutionally defective proceeding because of the ineffective assistance of his counsel.

The DJJ contends, however, that regardless of these collateral consequences, the circuit court was correct in its alternative holding that the habeas proceeding was moot because the only relief that a court considering a habeas petition can afford is "discharge from custody," citing Carroll v. Johnson, 278 Va. 683, 685 S.E.2d 647 (2009), West v. Director, Dep't of Corrs., 273 Va. 56, 639 S.E.2d 190 (2007), and McClenny v.

14

Murray, 246 Va. 132, 431 S.E.2d 330 (1993) along with Code §§ 8.01-654 and -662.[4] E.C. has been released from confinement, and therefore, according to the DJJ, the case is moot because no relief is available. We do not agree that these cases or statutes stand for the proposition advanced by the DJJ.

McClenny, West, and Carroll each address the availability of the writ of habeas corpus to petitioners in specific factual situations. In McClenny, the petitioner's sentence did not include any period of incarceration and consequently the petitioner was not in custody when the petition was filed. The petitioner argued that certain terms of his suspended sentence including reporting to a probation officer, submitting to DNA tests and performing community services qualified as "detention" for purposes of vesting jurisdiction in the trial court. The Court rejected this argument, citing Smyth v. Holland, 199 Va.

---

[4] The DJJ also relied upon Blair, 210 Va. 416, 171 S.E.2d 690. Although we earlier discounted the precedential value of this case, we note that the language in Blair dismissing the use of collateral consequences to avoid mootness was based on this Court's conclusion that Carafas, 391 U.S. 234, treating collateral consequences as creating a continued controversy, was not controlling because it involved the federal habeas corpus statute, which is "unlike" our statutes. Blair, 210 Va. at 417, 171 S.E.2d at 691. As set out above, the concept of a continuing controversy has been applied to habeas corpus proceedings under both 28 U.S.C. § 2254 (state prisoners) and § 2255 (federal prisoners), and both kinds of cases proceed under 28 U.S.C. § 2241 through § 2253 which today are directly analogous to our habeas corpus statutes. See, e.g., Code §§ 8.01-654 to -662.

92, 96-97, 97 S.E.2d 745, 748 (1957), and held the circuit court did not have jurisdiction of the case, because "he was not sentenced to any term of incarceration . . . [t]hus, he cannot show that he is 'detained' within the intendment of Code § 8.01-654(A)." 246 Va. at 135, 431 S.E.2d at 331. In short, jurisdiction never attached.

Similarly, neither West nor Carroll supports the DJJ's position. These cases established that habeas corpus relief was available even if a successful petitioner would not be discharged from custody. West declared that a petitioner was entitled to seek habeas corpus relief even when he challenged only one of two concurrent sentences he was serving. 273 Va. at 66, 639 S.E.2d at 197. Carroll reversed the long-standing "immediate release rule" and allowed habeas relief for recomputation of the length of a petitioner's sentence. 278 Va. at 692-94, 685 S.E.2d at 651-52. Both of these cases expanded the relief available in a habeas corpus proceeding and did not restrict such relief to discharge of the petitioner.

Finally, the DJJ points to the habeas corpus statutes, specifically Code §§ 8.01-654 and -662, saying that the "sole" remedy allowed "is discharge from custody." We disagree.

Code § 8.01-654, which establishes the right to pursue habeas corpus relief, does not address the remedy if a writ is granted. The statute allows a challenge to a conviction and

16

only requires that the petitioner allege that he is "detained without lawful authority" and that the petition be filed within a specific time period.

Code § 8.01-662 provides that the "court before whom the petitioner is brought shall either discharge or remand him, or admit him to bail . . . ." The DJJ's argument appears to be that this provision limits the habeas corpus remedy to an order either freeing the petitioner or returning him to custody. We reject such a narrow interpretation because it does not comport with the remedial purpose of the habeas corpus statutes, and the actual relief which we have afforded in habeas corpus proceedings.

The habeas corpus statutes are remedial in nature and are to be liberally construed. Carroll, 278 Va. at 693, 685 S.E.2d at 651-52. The narrow construction advanced by the DJJ would work a particularly harsh result in this case and in other cases involving juveniles who received indeterminate terms of confinement or parole under the supervision and control of the DJJ. See Code §§ 16.1-284.1 and -285, and -285.1. The DJJ's view would allow the DJJ to defeat any petition for a writ of habeas corpus filed by a juvenile under its supervision serving such an indeterminate sentence by releasing the juvenile from confinement or parole upon notification that such petition was filed. This group of juveniles, although given the right to

17

attack the validity of their conviction through filing a habeas corpus petition within certain time limits, Code § 8.01-654, would have no remedy to vindicate that right if the DJJ chose to release the petitioner from custody. Such an interpretation is inconsistent with the remedial nature of the habeas corpus statutes.

The DJJ's position also would allow the dismissal of a petition when the amount of time required by the litigation and appeal processes extends beyond the length of time the petitioner was detained. The length of time necessary to fully adjudicate a petition for a writ of habeas corpus is the result of a number of factors, many of which are not within the control of the petitioner. In other circumstances we have refused to deny the right to seek habeas corpus relief on the basis of judicial economy and convenience and held that such burden in our justice system "should rest on the shoulders of the judiciary rather than on those of an imprisoned petitioner." West, 273 Va. at 66, 639 S.E.2d at 197. Applying that philosophy here dictates that a petitioner exercising his right to challenge the validity of a conviction through a petition for a writ of habeas corpus should not be deprived of that right because factors beyond his control have caused the proceeding to extend beyond the period of his sentence, probation or parole.

18

Finally, as a practical matter, habeas corpus petitions have been entertained and relief granted when the relief will not result in the discharge of the petitioner.  Generally, petitioners who successfully challenge their criminal conviction are not released from the charges even though the petitioner secures the relief he sought, a determination that his conviction is invalid and the right to a new trial.  For example, the disposition of a petition for habeas corpus filed in this Court under our original jurisdiction in West, recited that the writ was "granted in part and dismissed in part."  Id. at 67, 639 S.E.2d at 197.  See also, e.g., Jones v. Peyton, 208 Va. 378, 381, 158 S.E.2d 179, 181 (1967); Burley v. Peyton, 206 Va. 546, 549, 145 S.E.2d 175, 177 (1965); Whitley v. Cunningham, 205 Va. 251, 258, 135 S.E.2d 823, 828-29 (1964).  But cf., e.g., Moreno v. Baskerville, 249 Va. 16, 20, 452 S.E.2d 653, 655 (1995) (indictments for offenses dismissed in habeas proceeding).

After consideration of our jurisprudence on mootness, as well as that of other state and federal jurisdictions, the habeas corpus statutes, their remedial purpose and prior applications, we conclude that collateral consequences of a conviction challenged in a habeas corpus proceeding may be considered in determining whether the proceeding is moot. Release from confinement, probation or parole during the

pendency of the proceeding does not automatically render the proceeding moot.

This holding does not dramatically expand habeas corpus jurisdiction. The predicate to establish habeas corpus jurisdiction remains; the petitioner must have been detained at the time the petition is filed and the petition must be filed within a discrete time period. Code § 8.01-654(A)(1), (2). Not all collateral consequences of a conviction will be sufficient to avoid a finding that the case is moot. Whether the collateral consequences claimed by the petitioner are sufficient to preclude a finding that the case is moot will be made on a case by case basis.

Turning to the facts of this case, we hold that the collateral consequences imposed on E.C. by the convictions he is challenging are sufficient to sustain a continued controversy. The relief from these consequences that E.C. seeks is a determination that the convictions which imposed them are invalid because of the ineffective assistance of counsel and that he is entitled to a new trial. If successful, the relief he seeks can be afforded by the court exercising its habeas corpus jurisdiction.

In summary, for the reasons stated, we will reverse the circuit court's judgment that it did not have jurisdiction to consider E.C.'s petition for a writ of habeas corpus and that

20

the habeas corpus proceeding was moot and remand the case for

further proceedings.[5]

Reversed and remanded.

---

[5] In light of our holding that the circuit court had jurisdiction to consider the petition, we need not address E.C.'s assignment of error that the circuit court erred in holding that the requirements attached to sex offender registration do not constitute detention, confinement, or custody for purposes of habeas corpus.

JUSTICE McCLANAHAN, concurring in part and dissenting in part.

I concur in the majority's holding that the circuit court erred in finding it lacked jurisdiction since E.C. was "detained" within the meaning of Code § 8.01-654(A)(1) when he filed his petition for habeas corpus.[1]  I dissent, however, from the majority's holding that the circuit court erred in finding the petition was moot because I do not believe our habeas corpus statutory scheme provides relief when the petitioner is no longer detained.

The remedy afforded under Virginia's habeas corpus statute is relief from an unlawful detention.  Code § 8.01-662 states:

> After hearing the matter both upon the return and any other evidence, the court before whom the petitioner is brought <u>shall</u> either <u>discharge or remand him</u>, or admit him to bail and adjudge the cost of the proceeding, including the charge for transporting the prisoner.

(emphasis added).  Therefore, the statute necessarily contemplates that the petitioner is detained such that the court shall either "discharge" the petitioner if it finds in his favor, or "remand" him if it does not find in his favor or if only the duration of his detention is affected by a finding in

---

[1] Pursuant to Code § 8.01-654(B)(3), a petition may allege "detention" even though "the sentence imposed for such conviction is suspended or is to be served subsequently to the sentence currently being served by petitioner."  Thus, the threat of future incarceration inherent in parole satisfies the requirement that the petitioner be detained.

his favor.  The statute does not provide any relief when the petitioner is no longer detained.

"When the language of a statute is plain and unambiguous, we are bound by the plain meaning of that statutory language." Lee County v. Town of St. Charles, 264 Va. 344, 348, 568 S.E.2d 680, 682 (2002).  " 'It is a cardinal rule of construction that statutes dealing with a specific subject must be construed together in order to arrive at the object sought to be accomplished.' "  Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (quoting Prillaman v. Commonwealth, 199 Va. 401, 406, 100 S.E.2d 4, 7 (1957)).

> Under the rule of statutory construction of statutes in pari materia, statutes are not to be considered as isolated fragments of law. . . . [T]hey should be so construed as to harmonize the general tenor or purport of the system and make the scheme consistent in all its parts and uniform in its operation, unless a different purpose is shown plainly or with irresistible clearness.

Id. (quoting Prillaman, 199 Va. at 405, 100 S.E.2d at 7). Construing provisions of Virginia's habeas corpus statute together, in particular Code §§ 8.01-654 and -662, the object sought to be accomplished by a writ of habeas corpus is relief from an unlawful detention.

Holding that a petitioner may seek relief from the collateral consequences associated with a criminal conviction, the majority not only construes our habeas corpus statute in a

way that is inconsistent with the object sought to be accomplished by the writ, but it essentially amends the statute to afford relief to petitioners that is plainly not provided for under the language of the current statutory scheme.

> "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used . . . . Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."

Chase v. DaimlerChrysler Corp., 266 Va. 544, 547, 587 S.E.2d 521, 522 (2003). The "expansive scope" given by the majority to the relief available through a writ of habeas corpus "simply do[es] not appear in the statute, and we cannot change or amend a statute under the guise of construing it." Coca-Cola Bottling Co. of Roanoke, Inc. v. County of Botetourt, 259 Va. 559, 565, 526 S.E.2d 746, 750 (2000).

As we explained in Carroll v. Johnson, 278 Va. 683, 693, 685 S.E.2d 647, 652 (2009), Virginia's habeas corpus statute allows the petitioner to challenge his detention "so long as an order entered in the petitioner's favor will result in a court order that, on its face and standing alone, will directly impact the duration of the petitioner's confinement." However, "disputes which only tangentially affect an inmate's confinement . . . are not proper matters for habeas corpus jurisdiction

24

because an order entered in the petitioner's favor in those cases will not result in an order interpreting convictions or sentences that, on its face and standing alone, will directly impact the duration of the petitioner's sentence."  Id. at 694, 685 S.E.2d at 652.[2]

Finding that our habeas corpus statute is not limited to relief from an unlawful detention, the majority reasons that "[p]etitioners who successfully challenge their criminal conviction are not released from the charges" but only gain "the right to a new trial."  The majority is certainly correct in this regard because "[t]he office of the writ of habeas corpus is not to determine the guilt or innocence of the prisoner. The only issue which it presents is whether or not the prisoner is restrained of his liberty by due process of law."  Lacey v. Palmer, 93 Va. 159, 163, 24 S.E. 930,931 (1896).  The fact that the petitioner is not "released from the charges" does not answer the question of what relief he is afforded when he proves an unlawful detention; rather, it begs the question of what relief he is afforded.  That question is answered by the plain

---

[2] The Court in Carroll discussed the relief available in a habeas corpus proceeding in the context of determining whether the circuit court erred in finding it lacked jurisdiction. Since the petitioner in Carroll was incarcerated, and therefore detained, the circuit court clearly had jurisdiction. Therefore, the Court's discussion of the relief available, while treated as an issue of jurisdiction, seems more properly considered as an issue of mootness.

language of the statute, which directs the court to "discharge" the petitioner from the detention found to be unlawful. Code § 8.01-662. If the court finds in the petitioner's favor but the petitioner is still subject to a lawful detention, the statute directs the court to "remand" the petitioner. Id.[3]

Because we must apply Virginia's habeas corpus statute, jurisprudence from the United States Supreme Court applying the federal habeas corpus statute and from other jurisdictions applying their state habeas corpus statutes or post-conviction relief rules does not provide persuasive authority. While the federal habeas corpus statute requires the petitioner to be "in custody" to file a petition, 28 U.S.C. § 2241(c), "the statute does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). In contrast to Virginia's habeas corpus statute which does limit the relief to discharge, the federal statute "provides that 'the court shall . . .

---

[3] I disagree with the majority that our decisions in West v. Director, Dep't of Corrs., 273 Va. 56, 639 S.E.2d 190 (2007) and Carroll support expansion of relief available in habeas corpus proceedings to collateral consequences stemming from a criminal conviction. In both West and Carroll, the petitioners were detained and sought relief from their alleged unlawful detentions. In fact, as we stated in West, our decision in that case complied with "the purpose and scope of the writ of habeas corpus, which is to test the legality of a prisoner's detention." West, 273 Va. at 66, 639 S.E.2d at 197. In contrast, E.C. does not seek relief from a detention.

26

dispose of the matter as law and justice require.' " Id.

(quoting 28 U.S.C. § 2243). The decisions from other

jurisdictions cited by the majority are primarily from states

that have adopted post-conviction relief rules superseding

traditional habeas relief or have habeas corpus statutes that

afford broad relief.[4] The remaining state cases cited by the

_____

[4] See, e.g., Alaska Stat. § 12.75.080 (post-conviction
relief statute providing court may grant "appropriate remedy");
Alaska R. Crim. P. 35.1(g) (post-conviction procedure rule
providing court shall "enter an appropriate order with respect
to the conviction or sentence" and "any supplementary orders
. . . that may be necessary and proper."); Colo. R. Crim. P.
35(a),(c)(3)(V) (post-conviction relief rule providing that
court may "correct a sentence" and shall "make such orders as
may appear appropriate"); Conn. Gen. Stat. § 52-470(a) (habeas
corpus statute providing court shall "dispose of the case as law
and justice require"); Del. Super. Ct. Crim. R. 61(h)(3) (post-
conviction remedy rule providing court shall "make such
disposition of the motion as justice dictates"); Fla. R. Crim.
P. 3.850(d) (post-conviction relief rule providing court may
"correct the sentence as may appear appropriate"); Ga. Code Ann.
§ 9-14-48(d) (habeas corpus statute providing court shall enter
"an appropriate order with respect to the judgment or sentence
challenged" and such supplementary orders "as may be necessary
and proper"); Idaho Code Ann. § 19-4907(a) (post-conviction
relief statute providing court shall enter "an appropriate order
with respect to the conviction or sentence" and any
supplementary orders "that may be necessary and proper"); Kan.
Stat. Ann. § 60-1505(d)(habeas corpus statute providing court
may make such orders as "justice and equity . . . may require");
N.J. Court Rules, R. 3:22-11 (post-conviction relief rule
providing court shall enter a judgment including "an appropriate
order or direction with respect to the judgment or sentence" and
any other appropriate provisions "as may otherwise be
required"); Or. Rev. Stat. § 138.520 (post-conviction relief
statute providing court may grant or order such "relief as may
be proper and just"); 42 Pa. Cons. Stat. § 9546(a) (post-
conviction relief statute providing court "shall order
appropriate relief" and issue orders "that are necessary and
proper"); Tenn. Code Ann. § 40-30-111(a) (post-conviction

27

majority were decisions in which the courts acknowledged the broad relief available under federal jurisprudence without any analysis of whether such relief was available under their own habeas corpus statutes.[5] Thus, these decisions are not instructive in determining the scope of relief afforded under Virginia's habeas corpus statute.

In sum, I cannot join in the majority's holding that Virginia's habeas corpus statute provides relief from collateral consequences stemming from a criminal conviction since the plain language of the statute only affords relief from an unlawful

procedure statute providing court shall "enter an appropriate order" and issue "any supplementary orders that may be necessary and proper"); Tex. Code Crim. Proc. Ann. art. 11.07 § 3(c) (habeas corpus statute defining "confinement" to include "any collateral consequence resulting from the conviction"). See also Bennett v. State, 289 A.2d 28, 30 (Me. 1972) (applying statute governing habeas corpus remedy then in effect and noting Maine's statute provided for broader relief than release).

[5] See, e.g., People v. Villa, 202 P.3d 427, 432 (Cal. 2009) (while citing federal jurisprudence that collateral consequences may be relevant in determining mootness, court held collateral consequences do not constitute custody for purposes of habeas attack); Duran v. Morris, 635 P.2d 43, 45 (Utah 1981)(while citing federal jurisprudence that collateral consequences may be relevant in determining mootness, court held petition moot without reference to state habeas statute); Monohan v. Burdman, 530 P.2d 334, 337 (Wash. 1975) (relying on federal jurisprudence that collateral consequences may be relevant in determining mootness, court held petition not moot without reference to state habeas statute); State v. Theoharopoulos, 240 N.W.2d 635, 638 (Wis. 1976) (court recognizing collateral consequences may defeat mootness under federal jurisprudence but finding state habeas relief unavailable since petitioner was in federal custody). See also McDuffle v. Berzzarins, 330 N.E.2d 667, 669 (Ohio 1975) (holding collateral consequences subsequent to involuntary confinement permitted petition be heard in that narrow context only).

detention.  Therefore, I would hold the circuit court did not err in finding that E.C.'s petition was mooted by his release from parole.