PRESENT:  Carrico, C.J., Lacy, Hassell, Keenan, Koontz, and Kinser, JJ., and Whiting, Senior Justice

COCA-COLA BOTTLING COMPANY
OF ROANOKE, INC.

                                        OPINION BY
v.  Record No. 990409       SENIOR JUSTICE HENRY H. WHITING
                                      March 3, 2000
COUNTY OF BOTETOURT


                FROM THE CIRCUIT COURT OF BOTETOURT COUNTY
                       George E. Honts, III, Judge


     The issue in this appeal is whether personal property was used (1) in a sales business and subject to local taxation, as the trial court held, or (2) in a manufacturing business and a part of the Commonwealth's tax base as set forth in Code § 58.1-1100, as the taxpayer contends.

     Code § 58.1-1100 segregates most of the capital of a trade or business as intangible personal property subject to state taxation only.  As pertinent here, one class of such intangible personal property is defined in Code § 58.1-1101(A)(2) as "[c]apital which is personal property, tangible in fact, used in manufacturing . . . businesses."  The tax on tangible personal property used in a sales business is assessed by localities. Code § 58.1-3500 (all tangible personal property taxed by localities except property classified as intangible personal property under Code § 58.1-1100 or merchants' capital taxable under Code § 58.1-3510).

Coca-Cola Bottling Company of Roanoke, Inc. (the taxpayer) filed an application in the circuit court under the provisions of Code § 58.1-3984 seeking a correction in Botetourt County's assessment of the taxpayer's 1994 local tangible personal property taxes.[1] The taxpayer alleged that the county improperly assessed vending equipment as personal property used in a sales business. The county filed an answer denying that the assessment was erroneous.

After overruling the taxpayer's motion for summary judgment on the pleadings, the court heard evidence and viewed the taxpayer's plant. Following argument and consideration of memoranda from counsel, the court denied the taxpayer's petition, holding that the property in issue was not used in the taxpayer's manufacturing business, but was used as part of the taxpayer's separate sales business. The taxpayer appeals.

The evidence, substantially undisputed, shows the following. The taxpayer operates under a license from the holder of a franchise from The Coca-Cola Company for the production, distribution, and sale of Coca-Cola products. The

---

[1]Code § 58.1-3984 provides that a taxpayer, aggrieved by a local tax assessment, may apply for relief in the local circuit court. The proceedings are conducted by the court sitting without a jury, and the burden of proof is upon the taxpayer to show that the assessment was invalid or illegal.

taxpayer's portion of the franchise area encompasses southwestern Virginia, a portion of the southern Piedmont of Virginia, a portion of northeastern Tennessee and a portion of southeastern West Virginia. The taxpayer's license had the required approval of The Coca-Cola Company and is subject to the terms of the licensor's franchise.

Most of the taxpayer's product is mixed and bottled in its Roanoke plant, moved into its warehouses located throughout its franchise territory, and distributed from the warehouses to the wholesale purchasers. Approximately one-third of the taxpayer's employees are engaged in the manufacture of its product. The remainder are engaged in administration, distribution and sales activities.

The taxpayer wholesales most of its product to retailers such as supermarkets, convenience stores, discount retailers, hotels, motels, restaurants, gasoline filling stations, and other such retail outlets. The taxpayer's wholesale customers retail some cooled drinks in cooling and dispensing equipment furnished by the taxpayer.

The taxpayer retails a smaller, but substantial, portion of its product in coin operated machines owned or rented by it. The tax status of the vending machines, coolers, and fountain

equipment which the taxpayer owns or rents from others is the subject of this opinion.[2]

Citing County of Chesterfield v. BBC Brown Boveri, Inc., 238 Va. 64, 380 S.E.2d 890 (1989), the taxpayer argues that if a substantial part of a firm's business consists of the actual process of manufacturing, the firm is a manufacturing business for tax purposes notwithstanding its performance of non-manufacturing activities. And the taxpayer points out that the trial court found that a substantial part of its business consisted of manufacturing.[3]

However, for a number of reasons, the taxpayer contests the court's finding that it conducted a separate sales business in which it used the taxed equipment. This finding subjected the taxpayer to another statutory provision that if a taxpayer is engaged in more than one business, the taxpayer "shall pay the tax provided by law on each branch of . . . its business." Code § 58.1-5.

---

[2] It makes no difference whether the taxpayer owns or leases the personal property in question. Its use determines its tax status. City of Martinsville v. Tultex Corp., 238 Va. 59, 63, 381 S.E.2d 6, 8 (1989).

[3] At trial, the county argued that the taxpayer was not a manufacturer under Code § 58.1-1102(A)(2), but it has not assigned cross-error to the court's ruling on this issue.

4

The taxpayer's first contention is that the franchise agreement, which controlled its licensing agreement, did not permit either the taxpayer's manufacturing or sales "activity [to] be performed independently of the other."  Although the franchise agreement is not a part of the record, we will assume that the taxpayer correctly characterizes its terms.

Additionally, the taxpayer quotes in part the court's description of its manufacturing, distribution, and sales activities as "vertically integrated functions."  Whether a taxpayer's activities are considered as two separate businesses for tax purposes, however, is not determined by the formal structure of the taxpayer's functions or the taxpayer's relation to its franchiser.  Rather, that issue is determined by the manner in which the taxpayer actually conducts its business. See Caffee v. City of Portsmouth, 203 Va. 928, 930-31, 128 S.E.2d 421, 422-23 (1962)(retail and wholesale sales in salesroom portion of bakery's manufacturing plant constitute a separate sales business for local license tax purposes).  Thus, we reject the taxpayer's claim that the terms of the franchise agreement and its own organizational structure determine its tax status.

Nevertheless, the taxpayer maintains that if a taxpayer is a manufacturer under Code § 58.1-1101(A)(2), it cannot also be classified as conducting a sales business.  The taxpayer claims

5

that the Caffee ruling is inapplicable here because the license tax statutes involved in Caffee are unlike the statutes involved in this case. In Caffee, we said the license tax statutes "show that the legislature has not classified the business of production and disposition of goods by a manufacturer into a single, separate subject of taxation." 203 Va. at 932, 128 S.E.2d at 424. Yet the taxpayer does not indicate in what way Code § 58.1-110l(A)(2) has classified the production and sale of goods into a single business.

Instead, the taxpayer interprets BBC Brown Boveri as holding that "[Code] § 58.1-1101(A)(2) classifies a business that engages in manufacturing and non-manufacturing activities exclusively as a manufacturer, provided that its manufacturing activities are substantial." Significantly, the taxpayer provides no supporting page citation for this proposition from BBC Brown Boveri. Instead, we find the following statement in that case:

> Another area of dispute is whether the design and engineering stages of a manufacturing job constitute manufacturing. The record discloses that [the taxpayer's] design and engineering work was ancillary either to original manufacturing work or to a rebuilding job. Thus, because [the taxpayer's] design and engineering are integral parts of its manufacturing activity, such work is properly classified as manufacturing.

238 Va. at 70 n.5, 380 S.E.2d at 893 n.5.

6

Obviously, the BBC Brown Boveri dispute was not resolved by applying the taxpayer's interpretation, but by considering that the described design and engineering work was a part of the later process of manufacturing. Unlike the situation in BBC Brown Boveri, in this case, the taxpayer's subsequent sales activities were not a part of its manufacturing process.

The taxpayer argues, however, that the sales activity in the taxed equipment indirectly affects its manufacturing activity because it, like every manufacturer, must sell its manufactured product in order to continue that activity. We effectively rejected this argument by our holding in Caffee that Caffee's sales room, which disposed of almost all its manufactured product, was a separate sales business. 203 Va. at 930-31, 128 S.E.2d at 422-23.

Thus, we agree with the County that the following rule from Caffee applies in this case.

> "The business of manufacturing an article is . . . essentially different from that of selling the article after it has been manufactured. And the fact that the article is manufactured for sale cannot have the effect of obliterating the line of demarkation between the two businesses."

203 Va. at 930, 128 S.E.2d at 423 (quoting Consumers' Brewing Co. v. Norfolk, 101 Va. 171, 173, 43 S.E. 336, 336 (1903)). Accordingly, we disagree with the taxpayer's argument that its

7

sales activities cannot be considered as separate sales business for the purposes of Code § 58.1-1101(A)(2).

Even so, the taxpayer construes Code § 58.1-1101(A)(2) as "exclud[ing] all tangible personal property used in a manufacturing business . . . from local taxation, regardless of how indirectly related the property at issue is to the central function of manufacturing or how distant the property is from the manufacturing plant."  (Second emphasis added.)  We do not agree with the taxpayer's argument that this sales equipment thereby became a part of its manufacturing business as indirectly related thereto.

In effect, the taxpayer asks us to add the bracketed words to the following language of Code § 58.1-1101(A)(2): "[c]apital which is personal property, tangible in fact, used [directly or indirectly] in manufacturing . . . businesses."  For much the same reason that we refused to add the word "directly" to this plain and unambiguous statute when urged to do so by the city in City of Winchester v. American Woodmark Corp., 250 Va. 451, 457, 464 S.E.2d 148, 152 (1995), we refuse to add either word here. The word and its expansive scope simply do not appear in the statute, and we cannot change or amend a statute under the guise of construing it.  Id.; City of Martinsville v. Tultex Corp., 238 Va. 59, 63, 381 S.E.2d 6, 8 (1989).

Hence, in deciding whether this sales equipment was "used in a manufacturing business," we apply the plain meaning of those words as used in the statute. American Woodmark, 250 Va. at 457, 464 S.E.2d at 152. Unlike the computers and office equipment in the American Woodmark and Tultex cases, which were used, in whole or in part, in planning, directing or administering the manufacturing function, the evidence in this case indicates that the sales equipment in question was not used in manufacturing but merely in selling the finished product. Thus, we conclude that the evidence supports the court's holding that this equipment could be considered as sales equipment used in a separate sales business. We need not decide whether the taxpayer was also engaged in a separate wholesale business because the taxpayer has not borne his burden under Code § 58.1-3984 of showing, which, if any, of the taxed property was used in sales at the wholesale level.

For these reasons, the judgment will be

Affirmed.