Present:  All the Justices

PROFESSIONAL BUILDING
MAINTENANCE CORPORATION

                                          OPINION BY
v.  Record No. 110410      JUSTICE ELIZABETH A. MCCLANAHAN
                                          April 20, 2012
SCHOOL BOARD OF THE COUNTY
OF SPOTSYLVANIA

            FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
                         David H. Beck, Judge


     Professional Building Maintenance Corporation (PBM)

appeals from the judgment of the circuit court, which sustained

the demurrer of the School Board of the County of Spotsylvania

(the School Board) and dismissed PBM's action.  For the reasons

that follow, we will reverse the judgment of the circuit court.

              I.    Facts and Proceedings Below

     PBM, which is in the business of providing janitorial and

industrial cleaning services, filed an amended complaint

against the School Board asserting causes of action arising

under the Virginia Public Procurement Act, Code § 2.2-4300 et

seq. (the Act).[1]  In reviewing the circuit court's order

------------------------------------------

     [1] Since the circuit court sustained a demurrer to an
amended complaint that is complete in itself and does not
incorporate or refer to the allegations in the prior complaint,
we consider only the allegations in the amended complaint that
was the subject of the demurrer sustained by the judgment
appealed from.  Lewis v. Kei, 281 Va. 715, 719, 708 S.E.2d 884,
888 (2011); McMillion v. Dryvit Sys., Inc., 262 Va. 463, 469,
552 S.E.2d 364, 367-68 (2001); Yuzefovsky v. St. John's Wood
Apts., 261 Va. 97, 102, 540 S.E.2d 134, 136 (2001).

sustaining a demurrer, we "accept as true all facts properly pleaded in the [amended] complaint and all reasonable and fair inferences that may be drawn from those facts."  Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003).

The School Board published a "Best Value Invitation For Bid" and addendum (the Invitation) seeking bids for the provision of custodial services in various schools located in Spotsylvania County.[2]  The Invitation stated the School Board would utilize the "'Best Value' procurement method" to consider factors in addition to price "to select the most advantageous offer."  The specific criteria were: expertise and experience relative to the scope of services (50 points); experience of personnel assigned to the project (5 points); supplies/equipment proposed for general cleaning (5 points); quality control program (10 points); and price (30 points). Although PBM submitted the lowest bid price among all the bidders, the School Board issued a notice of intent to award the contract to the bidder who had the highest score according

_____

[2] The Invitation is an exhibit to the amended complaint. Since accompanying exhibits referred to in the pleadings are made part of the pleadings, the Court may examine the exhibits in determining whether the amended complaint states a cause of action.  TC MidAtlantic Dev. v. Commonwealth, 280 Va. 204, 210, 695 S.E.2d 543, 547 (2010); see also Rule 1:4(i)(mention in pleading of accompanying exhibit shall make exhibit part of pleading).

to the points given for each of the specific criteria.  PBM sent a letter to the School Board expressing its concern that the bid review process was not carried out in a fair and objective manner in light of its experience and the fact that it submitted the lowest bid.  Representatives from PBM and the School Board met to discuss PBM's bid.  During the meeting, the School Board provided PBM with a summary of the points awarded to each bidder for the criteria set forth in the Invitation. Subsequently, PBM submitted a formal protest, and the parties met again to discuss PBM's bid.  Thereafter, the School Board confirmed, in writing, that PBM would not be awarded the contract.  Following the School Board's decision, PBM initiated these legal proceedings.[3]

In its amended complaint, PBM asserts the School Board violated the Act because it did not award the contract to PBM, who was the lowest responsive and responsible bidder.  PBM also contends the School Board considered criteria that were not stated in the Invitation and failed to describe the method for awarding points for the bid criteria in violation of the Act. Finally, PBM claims the School Board's failure to select PBM as

---

[3] The written correspondence between the parties, including PBM's bid protest and the School Board's response, as well as the summary of the bidders' scores, are exhibits to the amended complaint.

the successful bidder was not an honest exercise of discretion, but was arbitrary or capricious.

The School Board filed a demurrer to the amended complaint, asserting the contract was to be awarded to the best value bidder, not the lowest responsible bidder. The School Board further asserted the allegations of the amended complaint are not sufficient to support the claim of arbitrary or capricious actions.

The circuit court sustained the School Board's demurrer finding that "Best Value" is a method permitted for public bodies and the Invitation "sufficiently meets the requirements of law for a 'Best Value' procurement solicitation." The circuit court further found the allegations that the School Board's actions were arbitrary or capricious "are conclusory only and unsupported by allegations of fact and that there are no allegations of dishonesty or corrupt actions" on the part of the School Board.

II. School Board's Failure to Follow Requirements of Act

PBM asserts the circuit court erred in sustaining the demurrer because its amended complaint adequately alleges the School Board failed to properly follow the requirements of the Act. "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." Glazebrook, 266 Va. at 554, 587 S.E.2d at 591. "Whether a cause of action is

4

sufficiently pled is a legal issue which we review de novo." TC MidAtlantic Dev., 280 Va. at 210, 695 S.E.2d at 547.

Pursuant to Code § 2.2-4303, which identifies the "[m]ethods of procurement" to be used in awarding public contracts, the contract was to be awarded after competitive sealed bidding. Competitive sealed bidding "is a method of contractor selection, other than for professional services." Code § 2.2-4301.[4] Code § 2.2-4303(A) states that "[a]ll public contracts with nongovernmental contractors for the purchase or lease of goods, or for the purchase of services, insurance, or construction, shall be awarded after competitive sealed bidding, or competitive negotiation as provided in this section, unless otherwise authorized by law." (Emphasis added.) This section enumerates certain contracts that may be awarded and purchases that may be made using competitive negotiation or other methods of procurement. Code § 2.2-4303(B)-(J). The School Board's contract does not fall within any of these

---

[4] Professional services "means work performed by an independent contractor within the scope of the practice of accounting, actuarial services, architecture, land surveying, landscape architecture, law, dentistry, medicine, optometry, pharmacy or professional engineering. 'Professional services' shall also include the services of an economist procured by the State Corporation Commission." Code § 2.2-4301. The parties agree that custodial services are not professional services as defined by the Act.

5

subsections providing for a procurement method other than competitive sealed bidding.

The process to be followed by the public body in procuring a contract under the competitive sealed bidding process is set forth in the Act and consists of the following elements:

1. Issuance of a written Invitation to Bid containing or incorporating by reference the specifications and contractual terms and conditions applicable to the procurement. Unless the public body has provided for prequalification of bidders, the Invitation to Bid shall include a statement of any requisite qualifications of potential contractors. . . .

2. Public notice of the Invitation to Bid at least 10 days prior to the date set for receipt of bids by posting on the Department of General Services' central electronic procurement website or other appropriate websites. . . .

3. Public opening and announcement of all bids received.

4. Evaluation of bids based upon the requirements set forth in the invitation, which may include special qualifications of potential contractors, life-cycle costing, value analysis, and any other criteria such as inspection, testing, quality, workmanship, delivery, and suitability for a particular purpose, which are helpful in determining acceptability.[5]

---

[5] In evaluating the bids under this element, the public body "shall determine whether the apparent low bidder is responsible." Code § 2.2-4359(A). If the public body determines the apparent low bidder is not responsible, it must notify the bidder who is permitted to inspect the documents related to the determination and submit rebuttal information. The public body must issue a written determination of responsibility taking into account the rebuttal information. Code § 2.2-4359(A)(1)-(3). The School Board did not notify PBM

5. <u>Award to the lowest responsive and responsible bidder</u>. . . .[6]

Code § 2.2-4301 (emphasis added).  Therefore, under the plain language of the Act, the School Board was required to award the contract to the lowest responsive and responsible bidder.

We reject the School Board's position that its utilization of best value concepts permitted it to award the contract to the best value bidder instead of the lowest responsive and responsible bidder.[7]  Although the Act permits public bodies to "consider best value concepts when procuring goods and nonprofessional services," Code § 2.2-4300, it does not provide the School Board with a method of procurement in lieu of competitive sealed bidding.  <u>See</u> Code § 2.2-4303(C).[8]  To accept

---

that it was determined to be not responsible pursuant to the provisions set forth in this section.

[6] A responsive bidder is a "person who has submitted a bid that conforms in all material respects to the Invitation to Bid."  Code § 2.2-4301.  PBM asserts its bid conformed in all material respects to the Invitation and was, therefore, responsive.  The School Board has not contended otherwise.

[7] " 'Best value,' as predetermined in the solicitation, means the overall combination of quality, price, and various elements of required services that in total are optimal relative to a public body's needs."  Code § 2.2-4301.

[8] The only provision in the Act which expressly permits a public body to award the contract to the best value bidder is Code § 2.2-4308, which applies to design-build or construction management contracts and provides that a fixed price or not-to-exceed price design-build or construction management contract for public bodies other than the Commonwealth "shall be awarded to the fully qualified offeror who submits an acceptable proposal determined to be the best value" if the public body

7

the School Board's position, we would have to add language to the fifth element of competitive sealed bidding set forth in Code § 2.2-4301 by providing for an award to the best value bidder as an alternative to the lowest responsive and responsible bidder.  We cannot change or amend legislative enactments in this manner.  See, e.g., Coca-Cola Bottling Co. of Roanoke, Inc. v. County of Botetourt, 259 Va. 559, 565, 526 S.E.2d 746, 750 (2000).

In addition to PBM's claim that the School Board failed to award the contract to the lowest responsive and responsible bidder, PBM asserts that the School Board's consideration of best value criteria did not comply with the Act.  For example, PBM alleges that at the second meeting between representatives from PBM and the School Board, PBM was informed that two reasons it was not the successful bidder were PBM's failure to address how a transition from its existing janitorial company to PBM would be handled and its failure to explain how background checks would be undertaken.  According to PBM, these factors were not included in the Invitation criteria.  PBM also contends the Invitation did not identify factors that would be considered in how points were allocated among the bid criteria

complies with the requirements of this section.  Contracts awarded pursuant to this section are specifically identified in Code § 2.2-4303(D)(4) as exceptions from the required competitive sealed bidding method.

8

or how points would be awarded to bidders. Under the Act, the criteria and basis for evaluating bids must be stated in the Invitation and the evaluation of the bids must be in accordance with such criteria. See Code § 2.2-4300(C) ("The criteria, factors, and basis for consideration of best value and the process for the consideration of best value shall be as stated in the procurement solicitation."); Code § 2.2-4301 (evaluation of the bids must be "based upon the requirements set forth in the invitation").

In sum, the circuit court erred in finding that PBM does not adequately allege the School Board failed to properly follow the requirements of the Act. Since the Act requires the School Board to award the contract to the lowest responsive and responsible bidder and to describe the criteria used to evaluate the bid in its Invitation, PBM's claims that the School Board failed to comply with these requirements sufficiently plead a cause of action under the Act. See Code § 2.2-4364(C)(ii)(circuit court may reverse award that is not in accordance with law and the terms and conditions of the Invitation).

III. School Board's Arbitrary or Capricious Actions

PBM also assigns error to the circuit court's ruling that its amended complaint alleges insufficient facts of arbitrary or capricious conduct. "We have defined an act as arbitrary

9

and capricious when it is willful and unreasonable and taken without consideration or in disregard of facts or law or without determining principle, or when the deciding body departed from the appropriate standard in making its decision." James v. City of Falls Church, 280 Va. 31, 42, 694 S.E.2d 568, 574 (2010) (internal quotation marks and citations omitted).

PBM contends that during its first meeting with representatives from the School Board, it was informed the only reason it was not the successful bidder was because it failed to adequately describe the supplies and equipment that would be used despite the fact that PBM provided its plan to offer a unique program for use of "green seal certified" cleaning products and "first class equipment" to promote the health and safety of children and employees. During the second meeting, the School Board told PBM it was determined to be not responsible even though the School Board did not notify PBM of this determination or otherwise follow the procedures set forth in Code § 2.2-4359(A)(1)-(3).[9] In addition, the School Board informed PBM, for the first time, that it failed to adequately address its transition plan and how background checks would be undertaken, factors that were not included in the criteria set forth in the Invitation. During this meeting, the School Board

---

[9] The School Board subsequently retracted its prior statement that PBM was not responsible.

was unable to articulate the factors considered in how the points were allocated or how the points were awarded.

PBM further alleges that the points given to PBM for certain criteria specified in the Invitation had no basis in fact. Although PBM provided detail regarding its 36 years of experience in the janitorial industry, specifically including its prior experience in another public school system, it was awarded only 26.63 out of 50 points, ranking PBM 8th out of 9 bidders, and was not told that lack of experience caused it to be an unsuccessful bidder. In addition, PBM alleges that despite its plan for using "green seal certified" cleaning products and "first class equipment," it was awarded only 2 out of 5 points for cleaning and supplies.

In sum, PBM alleges the School Board willfully disregarded the fact that PBM submitted the lowest bid and failed to either award the contract to PBM or determine that it was not responsible as required by the Act. PBM alleges that certain scores it was given had no basis in fact and did not bear a rational relationship with the information provided in its bid. It also alleges the School Board was unable to explain how points were awarded for each of the criteria and that the explanations given by the School Board as to why PBM was not the successful bidder departed from the criteria provided in the Invitation. These allegations are not merely conclusory

11

and sufficiently state a cause of action under the Act.  Code § 2.2-4364(C)(i)(circuit court may reverse award that is not an honest exercise of discretion, but instead is arbitrary or capricious).

IV. Conclusion

For the foregoing reasons, we conclude the circuit court erred in sustaining the School Board's demurrer to the amended complaint.  Accordingly, we will reverse the judgment of the circuit court and remand for further proceedings consistent with this opinion.

<u>Reversed and remanded</u>.

JUSTICE MIMS, concurring.

I concur with the majority that the demurrer of the School Board should be overruled.  However, I take a different analytical path to reach that conclusion.

The majority correctly recites the competitive sealed bidding process by which a public body generally must procure goods and services.  The bedrock principle of that process is that the award must be to the lowest responsive and responsible bidder.  However, in 2000, the General Assembly carved out certain contracts that may be awarded using a novel concept

12

identified as "best value."[1]  Yet because this new concept is imperfectly grafted into the time-honored statute and its well-understood principles of "responsive" and "responsible," public bodies, potential bidders and courts must grapple with what the General Assembly intended and how "best value" is to be applied in the real world of public contracting.

The statute, by allowing best-value methodology while still requiring that the contract be awarded to the lowest bidder, is contradictory and ambiguous.  In ascertaining the statute's meaning, we therefore may "resort to rules of construction, legislative history, and extrinsic evidence." Doss v. Jamco, Inc., 254 Va. 362, 370, 492 S.E.2d 441, 466 (1997).

I begin, as courts must, with the proposition that the General Assembly, in enacting the best-value legislation, intended to make a substantive change in the law.  See Dale v. City of Newport News, 243 Va. 48, 51, 412 S.E.2d 701, 702 (1992) ("there is a presumption that a substantive change in law was intended by an amendment to an existing statute"). Under the prior law of competitive sealed bidding, the bid with

---

[1] The 2000 amendment states: " 'Best value,' as predetermined in the solicitation, means the overall combination of quality, price, and various elements of required services that in total are optimal relative to a public body's needs."  2000 Acts ch. 644.

the lowest price by a responsive and responsible bidder was awarded the contract.  <u>See</u> former Code § 11-37 (1999 Repl. Vol.).  That statute provided, as does the current one, for "[e]valuation of bids based upon the requirements set forth in the invitation, which may include special qualifications of potential contractors, life-cycle costing, value analysis, and any other criteria such as inspection, testing, quality, workmanship, delivery, and suitability for a particular purpose, which are helpful in determining acceptability."  <u>Id.</u> Thus, the former statute allowed the public body to promulgate criteria that would ensure that the lowest bidder met its specialized needs.

The amendment to the statute suggests that the legislature intended to permit public bodies to go beyond those criteria and use a modified competitive sealed bidding process to award contracts based upon a variety of bid factors in addition to price.  But because the best-value concept was imperfectly grafted into the statute, a question remains: are those unsuccessful bidders in best-value procurements less responsive or are they non-responsible?[2]  The briefs and argument in this case, and the majority opinion, highlight this dilemma.

_____

[2] A finding of non-responsibility in one procurement may have negative consequences for the bidder in subsequent procurements.

14

We must read the underlying statute and the 2000 amendment as an integrated whole.  Alston v. Commonwealth, 274 Va. 759, 769, 652 S.E.2d 456, 462 (2007) (statutes "should be so construed as to harmonize the general tenor or purport of the system and make the scheme consistent in all its parts and uniform in its operation, unless a different purpose is shown plainly or with irresistible clearness") (quoting Prillaman v. Commonwealth, 199 Va. 401, 405, 100 S.E.2d 4, 7 (1957)).  In so doing, I would hold that the best-value analysis does not implicate the responsibility of a bidder, but rather alters the traditional responsiveness prong.  In other words the "most responsive" responsible bidder in a best-value procurement is not necessarily the one with the lowest-priced bid.  This is where I part company with the majority, which holds that the plain meaning of the Act, even in a best-value procurement, requires the contract to be awarded "to the lowest responsive and responsible bidder."  (Emphasis added.)  If that is so, the best-value amendment is stripped of any substantive meaning.

I must conclude that a best-value procurement is fundamentally inconsistent with traditional procurement principles relying solely on an objective "lowest responsive"

15

bidder determination.  That appears to be what the General

Assembly intended.[3]

I concur with the conclusion of the majority that the

School Board's actions as alleged in the complaint were

arbitrary and capricious and did not comply with the distinct

best-value statutory mandate.  Because the best-value concept

decouples the decision to award from the determination of the

lowest-priced responsive bid by a responsible bidder – an

easily determined, objective two-step determination – the

statute includes certain protections to guard against excessive

subjectivity:  "The criteria, factors, and basis for

consideration of best value and the process for the

---

[3] While not authoritative, it is worth noting that the
Department of Planning & Budget, in its Fiscal Impact Statement
to a subsequent proposed amendment to the VPPA, described best-
value as

> "permit[ting] public bodies to rely on factors
> other than price when procuring goods and
> nonprofessional services.  By relying upon these
> other factors when making their procurement
> decisions, public bodies have the flexibility to
> purchase the product that best suits their
> needs, rather than the cheapest product that
> meets their needs.  Ultimately, such choices
> should improve the quality of government
> purchases and reduce these purchases' lifetime
> costs."

Department of Planning and Budget, 2001 Impact Statement for HB
1931, available at http://leg1.state.va.us/cgi-
bin/legp504.exe?011+oth+HB1931F122+PDF (last visited April 9,
2012) (emphasis added).

consideration of best value shall be as stated in the procurement solicitation." Code § 2.2-4300(C).

Professional Building Maintenance Corporation's Complaint sufficiently alleges an arbitrary and capricious process and non-compliance with this statutory requirement. For both of these reasons, the Complaint is sufficient and the demurrer should be overruled.