COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges AtLee, Athey and White
Argued by videoconference


COUNTY OF FRANKLIN, VIRGINIA

v.        Record No. 0092-24-3

UNDERWOOD LOGGING, LLC, d/b/a
 UNDERWOOD LOGGING

MEMORANDUM OPINION* BY
JUDGE KIMBERLEY SLAYTON WHITE
JULY 15, 2025


FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
James J. Reynolds, Judge

Christopher S. Dadak (Guynn Waddell, P.C., on briefs), for
appellant.

Mitchell P. Goldstein (C. Steven Setliff; Setliff Law, P.C., on brief),
for appellee.


This case involves a dispute between a logging company and a county government. At

the heart of the dispute are two issues. First, at what rate should the county assess the equipment

of the logging company. Second, for what years was the equipment of the logging company

located in the county and subject to the county's taxation. On the first issue, the trial court

correctly ruled that the applicable rate was the machinery and tools rate but improperly found

that the rate only applied to a portion of the company's equipment. On the second issue, the trial

court's conclusion that the company's equipment was located outside of the county in years

2020, 2021, and 2022, was supported by the evidence. We affirm in part and reverse in part.

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND

Underwood Logging, LLC, is a timber harvesting and chipping company with its principal place of business in Franklin County. Underwood performs harvesting and chipping operations in several other counties, including Pittsylvania County. Underwood's operations involve cutting timber, processing trees into logs, pulpwood, and biomass chips, and transporting those products to mills. Underwood primarily stored the relevant equipment at its job sites which were described in its timber harvest notifications forms ("Harvest Forms") and Form 1034 Virginia Forest Products Tax Returns ("1034 Form").

Underwood begins a job when it receives a call from a landowner or a mill requesting Underwood to cut timber down from their land. Before Underwood can begin cutting timber down at a job site, it builds a road, if needed, and a landing where the felled trees can be processed. Underwood then uses a cutter to cut the trees, a skidder to transport the trees to the landing, and a loader to delimb the trees. After the trees are cut into logs, Underwood takes what is left of the trees and feeds them into a chipper that produces chips. About 95% of Underwood's jobs involve the production of logs, pulpwood, and chips. The remaining 5% of jobs may only produce logs and/or pulpwood. Underwood does not have a separate business unit or business line that is dedicated to chipping operations, and it does not file a separate tax return for its chipping operations.

In 2019, Underwood registered with the Commonwealth of Virginia Department of Taxation as a forestry severer[1] in order to pay the Forest Products Tax pursuant to Code § 58.1-1600 et seq. ("Forest Products Tax" or "FPT"). An entity that is registered as a severer and pays the FPT is entitled to have its "[m]achinery or tools and repair parts therefor or

---

[1] Under Code § 58.1-1601, "severer" means any person in the Commonwealth of Virginia that fells, cuts, or otherwise separates timber or any other such forest product from the soil.

replacements thereof, used directly in the harvesting of forest products for sale or for use as a component part of a product to be sold" taxed at a rate that "shall not exceed that applicable generally to the machinery and tools." *See* Code § 58.1-3508.

Underwood uses all of its forestry equipment when it is in the field for a job. Thus, when Underwood is in the field, the location of the job is also the location of the forestry equipment. The locations of Underwood's job sites are documented in Harvest Forms submitted to the Virginia Department of Forestry to inform it when and where Underwood has started a job, as well as 1034 Forms, filed with the Virginia Department of Taxation.

Underwood's Harvest Forms show that Underwood began a job in Pittsylvania County on December 31, 2019, and notified the Virginia Department of Forestry of that work January 2, 2020. Underwood then began a job in Franklin County on January 8, 2020.

In 2020, Underwood began storing its equipment in Pittsylvania County when it was not in use at a job site, believing it could receive a more favorable tax treatment in Pittsylvania County than in Franklin County. Pittsylvania County assessed personal property taxes on Underwood's equipment for the tax year 2020, and Underwood paid those taxes. Underwood's Harvest Forms show that Underwood began a job in Pittsylvania County on September 30, 2020, and then a job in Franklin County on February 4, 2021.

In June 2021, Underwood purchased real property in Pittsylvania County. Prior to that purchase, Underwood did not own or lease any property outside of Franklin County. Underwood now stores its equipment on the Pittsylvania County property when it is not in use at a job site.

For the first quarter of 2020, Underwood reported on its 1034 Forms that it was only harvesting in Franklin County. Its Harvest Forms showed jobs in Franklin County and in Henry County. In the first quarter of 2021, Underwood reported only harvesting in Franklin County, and Harvest Forms confirm that Underwood did not have any harvests outside of Franklin

County in the first quarter of 2021. Underwood did not have any harvests in Pittsylvania County in 2021. In the first quarter of 2022, Underwood reported only harvesting in Henry County on the 1034 Forms. Its Harvest Forms showed a job in Franklin County in March 2022. Harvest Forms provided by Underwood and stipulated by the parties show that, from 2019 to 2022, 66% of Underwood's harvest acreage was in Franklin County and 8% was in Pittsylvania County.

Underwood paid the Commonwealth of Virginia the FPT on the logs, pulpwood, biomass chips, and fuel chips that it produced during the years 2018-2022.[2] Franklin County, however, assessed Underwood's forestry equipment from 2018-2022 at the heavy equipment rate of $1.89 per $100 in assessed value, which is higher than the machinery and tools rate, reasoning that Underwood only paid the FPT on its chipping operations, which involved biomass and fuel chips.

Underwood challenged Franklin County's tax assessment for the years 2020 through 2022, claiming that its equipment had been located in Pittsylvania County on 2020, 2021, and 2022's tax days.[3] For tax years 2018-2022, Underwood also challenged Franklin County's tax rate, arguing that its payment of the forest products tax barred Franklin County from taxing its equipment at a rate higher than Franklin County taxed machinery and tools.[4]

After a hearing, the circuit court found that, for tax purposes, Underwood's equipment was located in Pittsylvania County for tax years 2020 through 2022. The circuit court noted that

---

[2] Underwood's customers paid the Commonwealth of Virginia the FPT on the logs and pulpwood that Underwood produced for those years, thus satisfying all that was due to the Commonwealth.

[3] Underwood's first complaint only contested the 2020 and 2021 tax assessments. Underwood's second complaint broadened the challenge to "tax year 2020 . . . all future tax years . . . that [Franklin County] improperly notified the DMV." By agreement of the parties, the circuit court consolidated the cases but did not enter an order reflecting the consolidation.

[4] Underwood's first complaint only challenged the tax rate for 2018, 2019, and 2020; its second complaint expanded the challenge to include 2021 and 2022.

- 4 -

"[t]he determinative question on this issue is where the taxpayer's equipment was located on January 1 of the tax year." *See* Code § 58.1-3511 ("The situs for the assessment and taxation of tangible personal property, merchants' capital and machinery, and tools shall in all cases be the county, district, town or city in which such property may be physically located on the tax day."). Regarding tax years 2020 and 2021, the circuit court found that Harvest Forms indicated that Underwood's equipment was located in Pittsylvania County on January 1, 2020, and January 1, 2021. For tax year 2022, the circuit court noted that Underwood had purchased land in Pittsylvania in June 2021 and found that Underwood's equipment was in Pittsylvania County, in storage, on January 1, 2022.

The circuit court also found that Underwood was entitled to a partial tax rate deduction on its equipment. Applying Code § 58.1-3508, the court found that a forest products tax payor is entitled to a property tax rate on its "[m]achinery or tools . . . used directly in the harvesting of forest products" that "shall not exceed that applicable generally to machinery and tools." The circuit court first found that Underwood had separate lines of business. The circuit court then found that Underwood paid the FPT on the chips that it sold, but Underwood's customers paid the tax on logs and pulpwood. It reasoned that because other entities were paying the FPT on two of the three lines of business, Underwood was "not entitled to the full benefit of the preferential tax rate." The circuit court thus found Underwood was "entitled to a tax deduction at the machinery and tool rate based on the pro rata share of Underwood's business made up by its chipping operations."

Franklin County appeals the circuit court's findings regarding the location of the equipment. Franklin County and Underwood both appeal the circuit court's findings regarding the pro rata tax deduction on equipment. Both parties assert that the circuit court erred by assigning a pro rata rate. Franklin County argues that Underwood is not entitled to the lower rate

at all because "[w]hen any person, firm or corporation is engaged in more than one business which is made by law subject to taxation, such person, firm or corporation shall pay the tax provided by law on each branch of his, their or its business." Code § 58.1-5. Franklin County also notes that Underwood generates most of its revenue through selling logs, not chips. By contrast, Underwood contends that all of its equipment should be taxed at the machinery and tools tax rate. Underwood argues that it uses all of its tools when producing chips, and Code § 58.1-3508's terms do not limit the statute's application to a proportion of a business's income.

ANALYSIS

Appellate courts "give the findings of fact made by a trial court that heard the evidence and evaluated the credibility of the witnesses at a bench trial the same weight as a jury verdict." *Collins v. First Union Nat'l Bank*, 272 Va. 744, 749 (2006). "Those factual findings will not be disturbed on appeal unless they are plainly wrong or without evidence to support them." *Id.* Pure questions of law, however, are reviewed de novo. *Commonwealth v. Watson*, 297 Va. 355, 357 (2019).

      1. *The trial court was not plainly wrong or without evidence in determining the situs to be in Pittsylvania County.*

Franklin County asserts that the circuit court's findings that the situs of Underwood's equipment was in Pittsylvania County for the tax years 2020, 2021, and 2022 are wholly without support. Franklin County argues that the trial court's analysis of situs ignored the evidence in the case. Franklin County asserts that the trial court assumed that Underwood had a practice of moving its equipment on tax day and further assumed that Underwood made conscious efforts to avoid having equipment in Franklin County. Franklin County argues that these assumptions were not actually based in evidence. Franklin County first contends that Underwood's witness at trial testified that she did not know where the taxable equipment was on January 1, 2020, 2021, and 2022, although she did testify that the equipment was generally on the property "at the first of the

year." Second, Franklin points out that Underwood's corporate representative could not testify where the equipment was on any given tax day, as the representative would need to review the job site documentation and daily ticket information from the mill. Underwood did not provide these tickets in discovery and did not admit these daily log tickets into evidence at trial.

As the ruling of the trial court is based upon findings that are factual, we must affirm the trial court unless Franklin County carries its burden of showing that the findings were plainly wrong or without evidence to support them. As we discuss below, the County has not met this burden.

*i. The circuit court's findings regarding the situs of Underwood's equipment for tax year 2020 are supported by the record.*

The trial court found that Underwood's forestry equipment was located in Pittsylvania County on January 1, 2020, based on a timber harvest report. The report shows that Underwood started harvesting timber from a site in Pittsylvania County on December 31, 2019, and notified the Virginia Department of Forestry of that activity on January 2, 2020. The report amply supports the trial court's finding that Underwood's equipment was in Pittsylvania County on January 1, 2020. Furthermore, Underwood uses all of its forestry equipment when it is in the field on a job, and Underwood paid Pittsylvania County personal property taxes on its forestry equipment for tax year 2020, before Pittsylvania exempted it from taxation beginning in 2021. These additional facts bolster the trial court's finding of situs in Pittsylvania County for the tax year 2020.

Franklin County has failed to show that the trial court's finding regarding the situs of Underwood's forestry equipment for tax year 2020 is plainly wrong or without evidence to support it. Franklin County argues that the trial court ignored that Underwood reported a job in Franklin County on January 8, 2020, suggesting that it undermines a finding that the equipment was in Pittsylvania County on January 1 of that year. It does not. Rather, that fact tends to support the trial court's finding. Because the harvest report shows that Underwood started a job on December 31, 2019, in Pittsylvania County, and the harvest report shows that Underwood did not start its next job

until January 8, 2020, in Franklin County, a reasonable fact finder could conclude that Underwood's equipment was located in Pittsylvania County on January 1, 2020.

Franklin County also argues that the trial court ignored Underwood's 1034 Form for the first quarter of 2020, which only lists harvesting work in Franklin County. Even if the trial court did fully ignore the 1034 Form, this is of no consequence. The determinative issue for purposes of situs in this case is where Underwood's forestry equipment was located on January 1, 2020, and the 1034 Form is silent on that issue. That form does not, and cannot, establish that the trial court's finding of situs in Pittsylvania County for 2020 was plainly wrong or without support.

> ii. *The circuit court's findings regarding the situs of Underwood's equipment for tax year 2021 are supported by the record.*

The trial court next found that Underwood's forestry equipment was located in Pittsylvania County on January 1, 2021, based on timber harvest reports and on Ms. Underwood's trial testimony. The record includes a harvest report, which shows that Underwood began a job in Pittsylvania County on September 30, 2020. The next harvest report indicates that Underwood began its next job in Franklin County on February 4, 2021. Based on the relevant recorded dates, it was reasonable for the court to find that Underwood's forestry equipment was in Pittsylvania County on January 1, 2021, where it most recently started a job, and not in Franklin County, where Underwood did not start a job until February 4 of that year. The trial court "accept[ed] the testimony of the taxpayer that a conscious effort was made to keep the equipment out of Franklin County on tax day."

For the year 2021, Franklin County again has failed to show that the trial court's finding of situs in Pittsylvania County was plainly wrong or without evidence to support it. The County puts forth two arguments. First, the County asserts that there are no documents specifically showing that Underwood's forestry equipment was in Pittsylvania County on January 1, 2021. But Underwood was not required to produce such specific documents. The trial court was permitted to make

reasonable inferences to make its finding of situs. Here, it was reasonable for the trial court to infer, based on the most recent timber harvest reports before and after January 1, 2021, that Underwood's forestry equipment was in Pittsylvania County on that day.

Second, the County argues that the trial court erred by accepting Ms. Underwood's testimony regarding Underwood's conscious efforts to keep its forestry equipment out of Franklin County on tax day. Franklin County relies on her testimony that she did not "know the answer" to whether Underwood had moved its equipment to any specific location on January 1, 2021. The County argues that, even assuming Underwood would try to move its equipment somewhere, Underwood did not own any land in Pittsylvania County to store such equipment. Therefore, the trial court's acceptance of Ms. Underwood's testimony was in error. We disagree.

The County's reliance on Ms. Underwood's testimony that she could not say at trial whether or not Underwood moved its equipment to some specific location on January 1, 2021, is misplaced. Ms. Underwood testified that Underwood began storing its equipment in Pittsylvania County in 2020 whenever it was not in use for the express purpose of obtaining better tax treatment. The fact that Ms. Underwood could not say at trial if Underwood "moved" its forestry equipment to a specific location on January 1 is not of consequence. Because the timber harvest reports support a finding that Underwood's equipment was already at a job site in Pittsylvania County on January 1, 2021, it stands to reason that Underwood did not need to "move" its forestry equipment anywhere, anyway.

Additionally, this reasonable inference refutes Franklin County's argument that Underwood did not own any land on which to store the equipment at that time. If Underwood was working a job in Pittsylvania County on January 1, 2021, then the equipment would have been there. If, by chance, the job was completed before January 1, Ms. Underwood's undisputed testimony that Underwood began storing its equipment in Pittsylvania County in 2020 when it was not in use was

acceptable.  The trial court was entitled to find that testimony credible.  Franklin County does not show that the trial court's finding of situs in Pittsylvania County for the tax year 2021 was plainly wrong or without evidence to support it.

### iii. The circuit court's findings regarding the situs of Underwood's equipment for tax year 2022 are supported by the record.

Finally, the trial court found that Underwood's forestry equipment was located in Pittsylvania County on January 1, 2022, based on timber harvest reports.  Once more, the County has not met its burden of proving that the trial court erred.  Franklin County asserts that because Underwood did not report any jobs or harvests in Pittsylvania County between January 1, 2021, and December 1, 2022, that because Ms. Underwood testified that she did not know whether Underwood had moved its equipment to any specific location on January 1, 2022, and that because Underwood's corporate representative could not state where the forestry equipment was on January 1, 2022, therefore the trial court's finding was wholly without merit.  Despite these alleged deficiencies, there is sufficient evidence to uphold the trial court's finding of situs.

It is undisputed that Underwood purchased property in Pittsylvania County in June 2021 for the express purpose of storing Underwood's equipment there on the first of January 2022. Pittsylvania County was informed that Underwood was storing its equipment there and has not objected to Underwood doing so.  Additionally, Ms. Underwood testified that Underwood's property in Franklin County is only used to service forestry equipment.  She testified that the property in Franklin County does not store or house any forestry equipment.  Furthermore, any argument that the evidence is insufficient because Ms. Underwood could not testify as to whether Underwood moved its forestry equipment to a different location on January 1, 2022, is without merit.  Underwood would not have had to "move" its forestry equipment on January 1, 2022, if it was already located at Underwood's property in Pittsylvania County.  Based on this evidence, the

trial court's inference was reasonable, and it did not err in finding situs in Pittsylvania County for tax year 2022.

*2. Underwood's domicile does not govern the situs of its forestry equipment.*

Franklin County asserts that Code § 58.1-3511 is controlling in this case, arguing that because the trial court erred in determining situs in Pittsylvania County, and because there was insufficient evidence to determine where situs actually was, the court was thus mandated to hold that situs was in Franklin County—Underwood's domicile. Because we find no error in the trial court's determination of situs for the tax years 2020, 2021, and 2022, this Court need not address the merits of this argument.

*3. Underwood is entitled to have all of its equipment taxed at the machine and tools rate.*

Following its determination of situs, the circuit court then determined how to classify Underwood's business for the purpose of figuring out the correct tax rate. Underwood challenged Franklin County's tax rate, arguing that its payment of the forest products tax barred Franklin County from taxing its equipment at a rate higher than its machinery and tools. The circuit court found, first, that Underwood's business consisted of multiple lines of business. The court then concluded that Underwood is entitled to a tax deduction at the machinery and tools rate, but only for the pro rata share of Underwood's business made up by its chipping operations. Specifically, the circuit court held that, since Underwood does pay the FPT on chips, it was entitled to a *partial* benefit, and because Underwood uses all of its equipment when producing chips, it was entitled to a pro rata tax deduction for the percentage of Underwood's business attributable to its chipping operations.[5]

---

[5] Code § 58.1-5 provides that when an entity is "engaged in more than one business which is made by law subject to taxation, such an [entity] shall pay the tax provided by law on each branch of . . . its business."

- 11 -

Both Franklin County and Underwood challenge the circuit court's holding regarding the pro rata tax rate. Franklin County argues that, while the circuit court was correct to determine that Underwood has multiple lines of business, all of Underwood's equipment was meant to be taxed at the heavy equipment rate. Conversely, Underwood argues that the court was incorrect in its determination that it participates in multiple lines of business and that all of its forestry equipment should be taxed at the machinery and tools rate. We agree with Underwood.

In finding that Underwood engages in multiple lines of business, the circuit court relied upon *Coca-Cola Bottling Company of Roanoke, Inc. v. County of Botetourt*, 259 Va. 559 (2000). But *Coca-Cola Bottling* is inapplicable to the case we have before us.

In *Coca-Cola Bottling*, the plaintiff's business operations included producing, distributing, and selling Coca-Cola products. *Id.* at 562. The dispute concerned the application of two separate statutes, one which governed taxing personal property used in a manufacturing business, and the other governing taxing personal property used in a sales business. *Id.* at 561. The plaintiff maintained that, because its business involved the production of Coca-Cola products, its vending equipment should be taxed as personal property used in a manufacturing business as opposed to personal property used in a sales business. *Id.* at 561-62. In rejecting the argument, the court found that the plaintiff was, in fact, engaged in two separate lines of business—a manufacturing business and a sales business. *Id.* at 562. Thus, the court held that the vending equipment was taxable as personal property used in a sales business because it "was not used in the taxpayer's manufacturing business but was used as a part of the taxpayer's separate sales business." *Id.* In affirming that trial court's decision, the Supreme Court of Virginia reiterated that "[t]he business of manufacturing an article is . . . essentially different from that of selling the article after it has been manufactured." *Id.* at 564 (second alteration in

original) (quoting *Caffee v. City of Portsmouth*, 203 Va. 928, 930 (1962)). Such is not the case here.

Unlike the plaintiff in *Coca-Cola Bottling*, Underwood does not have separate lines of business that can be taxed separately. Underwood produces logs, pulpwood, and chips at a single job site 95% of the time. For the remaining 5% of the time, Underwood may work on a job that only produces logs and/or pulpwood. Underwood uses all of its equipment to produce all of its products, and there is no discrepancy in which customers purchase which products that would justify delineating Underwood's business. With the facts established, it is this Court's role to determine the correct application of Code § 58.1-3508.

Code § 58.1-3508 reads:

> A. Machinery or tools and repair parts therefor or replacements thereof, used directly in the harvesting of forest products for sale or for use as a component part of a product to be sold, shall constitute a classification for local taxation separate from other such classifications of real or personal property or machinery and tools as defined in § 58.1-3507. The rate of assessment and the rate of tax shall not exceed that applicable generally to machinery and tools.

> B. The provisions of this section shall be applicable only to taxpayers liable for payment of forest product taxes under Chapter 16 (§ 58.1-1600 et seq.) of this title.

"Under well-established principles, an issue of statutory interpretation is a pure question of law which we review de novo." *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007). "When the language of a statute is unambiguous, we are bound by [its] plain meaning." *Id.* "In interpreting [a] statute, 'courts apply the plain meaning . . . unless the terms are ambiguous or applying the plain language would lead to an absurd result.'" *Baker v. Commonwealth*, 284 Va. 572, 576 (2012) (second alteration in original) (quoting *Boynton v. Kilgore*, 271 Va. 220, 227 (2006)).

Here, Code § 58.1-3508 is plain and unambiguous in its language. The statute is clear in its application to "machinery or tools or repair parts . . . used directly in the harvesting of forest products for sale or for use of a component part of a product to be sold." Underwood's forestry equipment, as a forestry severer with a single line of business that uses all of its equipment in harvesting forestry products, fall squarely within the terms of this statute. Under paragraph A, the rate of assessment on all applicable equipment is not to exceed the machinery and tools rate. Based on the plain language of the statute, Underwood's contention is correct. Underwood is entitled to the reduced tax rate on all of its equipment.

CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part.

*Affirmed in part, and reversed in part.*